RICHARD HANSEN LAND, INC., A MONTANA CORPORATION, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; JOHN KAMMERZELL FARMS, INC., A MONTANA CORPORATION, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Richard Hansen Land, Inc. v. Commissioner
Docket Nos. 3582-91, 25324-91
United States Tax Court
T.C. Memo 1993-248; 1993 Tax Ct. Memo LEXIS 251; 65 T.C.M. (CCH) 2869; June 2, 1993, Filed *251 Decision will be entered under Rule 155 in docket No. 3582-91. Decision will be entered for petitioner in docket No. 25324-91. For petitioners: Bradley E. Dugdale, Gersham Goldstein, and Jaime M. W. Sanders. Peter R. Jarvis, in docket No. 25324-91 only. For respondent: Thomas E. Ritter. TANNENWALD
TANNENWALD
MEMORANDUM OPINION TANNENWALD, Judge: In these consolidated cases, respondent determined deficiencies in the Federal income taxes of Richard Hansen Land, Inc. (RHLI), and John Kammerzell Farms, Inc. (JKFI) (collectively referred to as petitioners), as follows: Richard Hansen Land, Inc. Tax Year
Ending
Deficiency
2/28/86
$ 1,219.00
2/28/87
1,016.00
2/29/88
1,083.00
2/28/89
1,016.00
John Kammerzell Farms, Inc. Tax Year
Ending
Deficiency
11/30/86
$ 2,607.90
11/30/87
2,862.00
11/30/88
5,400.00
After concessions by RHLI, the sole issue for decision is whether petitioners are entitled to amortize the cost of acquiring estates for years in farm land where each petitioner's controlling shareholders simultaneously acquired the remainder interests in such land. This case was submitted fully stipulated pursuant to Rule 122(a). All the stipulated *252 facts are found accordingly. The attached exhibits are incorporated by reference. Facts as to Richard Hansen Land, Inc., Docket No. 3582-91
RHLI was incorporated in Montana on January 31, 1984, and had its mailing address at Gildford, Montana, when the petition herein was filed. It filed U.S. Corporation Income Tax Returns, Forms 1120, for its fiscal years ending February 28 (February 29 in 1988), 1986, 1987, 1988, and 1989. At all relevant times, Richard E. Hansen served as president of RHLI and was its sole shareholder. Cheryl Hansen, his wife, was secretary and treasurer, and Mr. and Mrs. Hansen (sometimes referred to as the Hansens) comprised the board of directors. On January 31, 1984, Mr. Hansen purchased 50,000 shares of RHLI stock in exchange for 21,580 bushels of wheat and 18,300 bushels of barley. This exchange constituted the only capital contribution by Mr. Hansen to RHLI for the 1984 calendar year. Sometime between January 31, 1984, and May 31, 1984, RHLI transferred a portion of the wheat valued at $ 28,415.48 back to Mr. Hansen. On their 1984 Federal income tax return, the Hansens reported the wheat as "grain in lieu of wages". On January 31, 1984, RHLI *253 opened a checking account and a savings account at the Citizens Bank of Montana (Citizens). Mr. and Mrs. Hansen each had signatory authority in respect of both accounts. On February 10, 1984, RHLI deposited $ 24,000.00 and $ 1,824.96 into its savings and checking accounts at Citizens, respectively, comprising a $ 25,824.96 payment received from the sale of grain to General Mills, Inc. Between January 31, 1984, and October 1, 1984, RHLI received a total of $ 115,039.02 from the sale of grain and associated government farm program payments (government payments), which it deposited into its accounts. On June 26, 1984, RHLI deposited $ 238,105.70 into its checking account at Citizens. Of that amount, $ 179,000 represented the proceeds of a commercial loan from Citizens to RHLI. The remainder, $ 59,105.70, was transferred from RHLI's savings account, and represented proceeds from its sales of grain, government payments, and interest earned on its savings account. On June 27, 1984, RHLI purchased a 30-year estate for years, and the Hansens purchased the remainder interest, in a parcel of land owned by the Estate of Serena Bakke (the estate) in Hill County, Montana. The total purchase *254 price was $ 224,000, of which $ 211,165 was paid for the estate for years by check of RHLI drawn on its checking account at Citizens and $ 12,835 was paid for the remainder interest by check of the Hansens drawn on their personal account at Citizens. The funds used by the Hansens to purchase their remainder interest constituted a portion of the proceeds from the May 31, 1984, sale of 7,352 bushels of wheat owned by Mr. Hansen. At the time RHLI purchased the estate for years, there were crops growing on the land valued at $ 8,000. RHLI subtracted this amount from the purchase price ($ 211,165) and amortized the remainder ($ 203,165) ratably over the 30-year term. Following its purchase of the estate for years, RHLI has planted and harvested grain on the land, with all attendant farming operations typical of farm corporations in the area. Mr. Hansen, in conjunction with other employees of RHLI, has performed the work involved in RHLI's farming and ranching operations. RHLI reported proceeds derived from the sale of grain and government payments on its Federal income tax returns for its fiscal years ending in 1985, 1986, 1987, 1988, and 1989. Prior to forming RHLI in 1984, Mr. *255 Hansen was engaged in the business of grain farming as a sole proprietor. The estate for years reflected an interest in a portion of the same real property on which Mr. Hansen had conducted that business as lessee. [1]
Facts as to John Kammerzell Farms, Inc., Docket No. 25324-91
JKFI was incorporated in Montana on November 21, 1983, and had its mailing address at Chester, Montana, when the petition herein was filed. It filed U.S. Corporation Income Tax Returns, Forms 1120, for its fiscal years ending November 30, 1986, 1987, and 1988. At all relevant times JKFI was engaged in the business of grain farming. John Kammerzell served as president of JKFI and owned 75 percent of its stock. Frances Kammerzell, his wife, was secretary and treasurer and owned 25 percent of its stock, and Mr. and Mrs. Kammerzell (sometimes referred to as the Kammerzells) comprised the board of directors. On November 21, 1983, its board of directors *256 accepted Mr. Kammerzell's offer to transfer 50,000 bushels of wheat and a residence in exchange for 35,000 shares of JKFI's common stock and a promissory note from JKFI for $ 35,000. On its initial tax return for the short year ending on November 30, 1983, JKFI disclosed that the fair market value of the grain received from Mr. Kammerzell was $ 185,000. On December 1, 1983, JKFI entered into a lease with A. C. and Lucille Kammerzell, as lessors, in respect of substantial farmland. A. C. and Lucille Kammerzell are the parents of John A. Kammerzell. The lease term was 10 years with provision for automatic 1-year renewals unless terminated by one of the parties. It required that the land be used for farming and provided that the rental was to be a "one-fourth crop share in kind of all grains and crops". [2]
Between December 17, 1983, and January 1, 1988, *257 JKFI purchased estates for 25 years in portions of the land it leased from A. C. and Lucille Kammerzell as follows: Description of Land Subject
Purchase Price
Date of Purchase
To Estate For Years
Of Estate 12/17/83
Township 32 North, Range 6
$  29,100
East, M.P.M., Section 29,
S1/2NW1/4
1/1/84
Township 31 North, Range 6
29,100
East, M.P.M., Section 4,
N1/2SE1/4
1/1/84
Township 32 North, Range 6
247,520
East: Section 28, SE1/4
Section 29, SE1/4SW1/4
Section 33, E1/2
Township 31 North, Range 6
East: Section 4, NE1/4
1/1/85
Township 31 North, Range 6
29,100
East, M.P.M., Section 4,
E1/2NW1/4
1/1/86
Township 32 North, Range 6
29,100
East, M.P.M., Section 33,
E1/2SW1/4
11/26/86
Township 31 North, Range 6
29,100
East, M.P.M., Section 4,
W1/2NW1/4 and NW1/4SW1/4
1/1/88
Township 32 North, Range 6
29,100
East, M.P.M., Section 30,
SE1/4NE1/4 and E1/2SE1/4
At the same times, the Kammerzells purchased the remainder interests for $ 2,900, $ 2,900, $ 24,480, $ 2,900, $ 2,900, $ 2,900, and $ 2,900, respectively. [3]
*258 JKFI paid in full for the estates for years it received under the first, second, fourth, fifth, and sixth purchases with checks drawn on its corporate checking account at Liberty Bank of Montana. The third and seventh purchases were to be paid for in installments and, during the years at issue, JKFI made payments by check of principal and interest in the amount of $ 88,446.18 on the former and in the amount of $ 9,445.00 on the latter. All payments by JKFI to purchase the estates for years have been made with funds obtained from its farming business. JKFI deducted $ 14,489, $ 15,761, and $ 16,721 as amortization expense for its taxable years ending November 30, 1986, 1987, and 1988, respectively, related to the acquisition costs of the estates for years. The amounts deducted were based on 25-year amortization periods. Mr. Kammerzell paid in full for the remainder interests he and Mrs. Kammerzell received under the first, second, fourth, fifth, sixth, and seventh purchases with checks drawn on his personal checking account. He has made payments for the third purchase with checks drawn on his personal checking account. All such payments were made with the Kammerzells' personal *259 funds. Since its incorporation, JKFI has planted, harvested, and sold grain, with all the attendant farming operations typical of farm corporations in the area. Mr. Kammerzell, in conjunction with other employees of JKFI, has performed the work involved in JKFI's farming and ranching business. JKFI has reported substantial proceeds from agricultural sales, crop insurance proceeds, and government payments on its tax returns for each year since its incorporation. Before forming JKFI in 1983, Mr. Kammerzell was engaged in the business of farming and ranching as a sole proprietor. The estates for years reflected an interest in a small portion of the land on which Mr. Kammerzell had conducted the farming business under the 10-year lease. The issue we must decide is whether petitioners are entitled to amortize the costs of acquiring estates for years in farmland. As a general rule, [4] *261 a taxpayer who purchases a term interest is entitled to deduct ratably the cost of that interest over its expected life. [5]Gordon v. Commissioner, 85 T.C. 309, 322-323 (1985), and cases cited therein; Lomas Santa Fe, Inc. v. Commissioner, 74 T.C. 662, 683 (1980), *260 affd. 693 F.2d 71 (9th Cir. 1982). The principle applies even though the property underlying the term interest is not depreciable. Lomas Santa Fe, Inc. v. Commissioner, 693 F.2d at 72-73 n.2; Gordon v. Commissioner, supra at 323. However, a taxpayer may not amortize the cost of a term interest where, without additional investment, he divides nondepreciable property into two parts, one of them being a term interest. United States v. Georgia Railroad and Banking Co., 348 F.2d 278, 287-289 (5th Cir. 1965); Gordon v. Commissioner, supra; Lomas Santa Fe, Inc. v. Commissioner, 74 T.C. at 683. Initially, we note that respondent concedes, and we agree, that each petitioner and its shareholders were distinct taxpayers with the result that we need not explore the applicability of Moline Properties, Inc. v. Commissioner, 319 U.S. 436 (1943). Respondent also recognizes that taxpayers are free to structure their transactions so as to obtain tax benefits permitted by law. See Gregory v. Helvering, 293 U.S. 465, 469 (1935); Gordon v. Commissioner, supra at 326. *262 Respondent contends, however, that petitioners and their shareholders were so intertwined that, for purposes of this case, they should be considered as a unit, i.e., as alter egos of each other. Respondent goes on to argue that there was an absence of business purpose for structuring the form of the transactions as purchases of estates for years and remainders, with the result that the substance of the transactions was the purchase of the entire interest in the land by petitioners and a splitting off of the remainders to the shareholders. Petitioners counter that the substance of the transactions coincides with their form in that there were separate purchases from third parties of the estates for years and remainders with separate funds. Respondent asserts that her position is dictated by United States v. Georgia Railroad and Banking Co., supra, Gordon v. Commissioner, supra, and Lomas Santa Fe Inc. v. Commissioner, supra. While we would normally not be inclined to repeat the analysis of Georgia Railroad and Lomas Santa Fe set forth in our opinion in Gordon v. Commissioner, 85 T.C. at 323-324, *263 we believe such repetition herein will furnish a more complete background to our decision herein. In United States v. Georgia Railroad and Banking Co., supra, the corporate taxpayer leased its railroad properties, including assets and securities of two other railroad corporations in which it had an interest, to an individual for 99 years. Approximately 73 years into the lease, it distributed the reversionary interest in certain of the securities to its shareholders as a dividend in kind, retaining a leasehold interest which it sought to amortize over the remaining term of the lease. Having determined that the leasehold created by the taxpayer in the nondepreciable stock was not itself depreciable property, the court subsequently concluded that the distribution of the reversion did not make the retained lease a depreciable asset. The court stated: By distributing the reversion in 1954, taxpayer did nothing more than split its bundle of property rights into two parts. We cannot see how this action on its part can result in a depreciable asset where none previously existed, unless it made some additional investment. * * * [348 F.2d at 288.] *264 In Lomas Santa Fe, Inc. v. Commissioner, supra, the taxpayer owned land on which it planned to develop a luxury community. To facilitate the sale of residential lots, and for business reasons related to State law, it formed a wholly owned subsidiary to hold the assets of a golf course and country club, which it then transferred to the subsidiary subject to a retained estate for 40 years. The taxpayer sought to depreciate that portion of the estate for years which reflected its interest in the land and landscaping of the golf course. Relying upon United States v. Georgia Railroad and Banking Co., supra, we held that, because the underlying property (i.e., the golf course) was a nondepreciable asset which the taxpayer merely divided into two parts (i.e., estate for years and remainder interest), it was not entitled to amortize its basis in the term interest. Lomas Santa Fe, Inc. v. Commissioner, 74 T.C. at 684. Finally, in Gordon v. Commissioner, supra, the taxpayer was an individual who had established a family trust for the benefit of his minor children. The taxpayer *265 and his wife, as trustee of the trust, entered into a series of joint purchase agreements to acquire tax-exempt bonds. Specifically, each agreement provided that the taxpayer would acquire the life estate in the bonds and the trust would acquire the remainder interest. Having acquired an income interest in the bonds, the taxpayer sought to amortize the cost of such interest ratably over his expected life. While in form, the taxpayer had acquired a depreciable income interest in the bonds with the family trust having acquired the remainder interests therein, we concluded that, in substance, the taxpayer had purchased full ownership of the bonds and transferred remainder interests to the trusts. Accordingly, we applied the rationale of Lomas Santa Fe, Inc. v. Commissioner, supra, and United States v. Georgia Railroad and Banking Co., supra, and disallowed any deductions for amortization of the taxpayer's "life interests" in the bonds. Gordon v. Commissioner, supra at 331. United States v. Georgia Railroad and Banking Co., supra, and Lomas Santa Fe, Inc. v. Commissioner *266 , supra, are distinguishable. In those cases, both in form and in substance, the taxpayer owned a nondepreciable asset which it divided into a term interest and a remainder (or reversionary) interest. In the present case, the taxpayers purchased the estates for years from a third party, a distinction recognized by this Court in Lomas Santa Fe, Inc. v. Commissioner, 74 T.C. at 683 (holding that the retention of an interest created by a division of property is distinguishable from the purchase of such interest). Gordon v. Commissioner, supra, is also distinguishable. The transactions at issue herein, like those in Gordon, involved the simultaneous joint acquisition of term interests and remainder interests from a third party who, on the record before us, was indifferent as to the precise manner in which the transactions were structured. In the context of a simultaneous joint acquisition, we noted in Gordon that it was: appropriate to take into account the fact that the participation of the acquirer of the remainder interest is an essential element in affording the acquirer of the income interest *267 the opportunity to obtain the tax benefit of an amortization deduction. * * * [85 T.C. at 325; fn. ref. omitted.]
We found this especially significant where the acquirer of the term interest and the acquirer of the remainder interest were related persons, Gordon v. Commissioner, 85 T.C. at 325, stating that "the level of skepticism as to the form of the transaction is heightened, because of the 'greater potential for complicity between related parties in arranging their affairs in a manner devoid of legitimate motivations.'" Gordon v. Commissioner, 85 T.C. at 325-326. It is important to note, however, that our position in Gordon v. Commissioner, supra, was not predicated upon a foundation that transactions such as involved herein per se do not create a vehicle for amortization. Rather, based on an evaluation of the facts in Gordon, we concluded that the taxpayer acquired the bonds outright, using the family trust as "a mere stopping place for a portion of their purchase prices." Gordon v. Commissioner, 85 T.C. at 328. *268 Although our decision was based on numerous factors, we found it particularly important that the funds used by the trust to purchase its remainder interests were provided, in large part, by the taxpayer. In this respect, approximately 82 percent and 74 percent of the funds deposited in the trust's savings account in 1976 and 1977, respectively, to acquire remainder interests in the bonds came from the taxpayer. Moreover, of the $ 78,140 the taxpayer provided the trust during 1976, only $ 32,775 of that amount was reported by the taxpayer on his gift tax return for that year. Similarly, of the $ 58,099 the taxpayer provided the trust in 1977, none of this amount was reported on his gift tax return for that year. The apparent use by the taxpayer of the trust as a "mere stopping place" or "vehicle" for the cash used to accomplish the acquisitions, coupled with the fact that his wife served as trustee of the trust in a somewhat less than independent role, demonstrated that, in substance, the taxpayer acquired the bonds outright, and that the rationale of Lomas Santa Fe, Inc. v. Commissioner, supra, and United States v. Georgia Railroad and Banking Co., supra, *269 applied to disallow the deductions claimed for amortization of the "income interests" in the bonds. Gordon v. Commissioner, 85 T.C. at 328-331. Unlike Gordon v. Commissioner, supra, it cannot be said that petitioners used their shareholders as "mere stopping places" for the funds used to accomplish the acquisitions. While it is true that RHLI transferred wheat to Mr. Hansen prior to the date on which the Hansens purchased the remainder interest, and that a portion of the proceeds from the sale of that wheat was used by the Hansens to acquire the remainder interest, it is also true that, unlike the taxpayer in Gordon v. Commissioner, 85 T.C. at 329, where the majority of the funds given to the trust were not reported for gift tax purposes (an element which we considered indicative of the use of the trust as a conduit), the Hansens reported the receipt of wheat as wages on their 1984 income tax return. Had the Hansens thought the wheat, or the proceeds from its sale, was not their own, it seems highly unlikely that they would have recognized the value of that wheat as taxable income. *270 Moreover, respondent concedes that Mr. Hansen rendered services to RHLI, and there is nothing in the record that would indicate that the transfer of wheat by RHLI to Mr. Hansen represented anything other than wages. Similarly, we are satisfied that the funds used by the Kammerzells to acquire their remainder interests were their own, not those of JKFI. [6] In this regard, we note that respondent stipulated that the Kammerzells purchased their remainder interests with "personal funds". We are not impressed with respondent's search for a business purpose to justify the form of the transaction. It is obvious that respondent's attack is not directed at the fact that petitioners ended up with an estate *271 for years. Rather, respondent is saying that however valid the reasons for acquiring an estate for years may be, one must have a reason other than a tax reason for the form used. The effect of such a position is to suggest that if tax advantages are the motivating force, one must choose a structure for the transaction which will minimize and even eliminate those advantages, at least where related parties are involved. Under this thesis, the fact that the transaction has substance would be irrelevant. We were not prepared to go this far in Gordon v. Commissioner, supra, and we are not prepared to extend our holding in that case to a situation such as is involved herein. The question in this case is not one of purpose but whether the acquisitions of the estates for years and the remainders "were in fact what they appear to be in form." Cf. Hobby v. Commissioner, 2 T.C. 980, 985 (1943). We think that the circumstances herein satisfy that test. The fact that the transactions might have been structured another way, more advantageous to the revenue, does not, in and of itself, justify recasting their form. Compare *272 United States v. Cumberland Public Service Co., 338 U.S. 451 (1950), with Commissioner v. Court Holding Co., 324 U.S. 331 (1945). See Palmer v. Commissioner, 62 T.C. 684, 693 (1974), affd. 523 F.2d 1308 (8th Cir. 1975). [7]
The long and short of the matter is that the property involved was to be used and was used in petitioners' businesses. Petitioners decided to acquire estates for years at prices which they paid for out of their own funds, and the shareholders decided to acquire the remainders, at prices which they paid for out of their own funds -- prices as to which respondent has raised no question in respect of fairness in terms of value received. See supra note 3. The fact that the remainder interests were acquired simultaneously by their shareholders, *273 while suspect, is insufficient, standing alone, to disregard the form of the transactions at issue. On the facts and circumstances reflected by the record herein, we hold that petitioners were entitled to the deductions claimed for amortization of the costs of the estates for years. Decision will be entered under Rule 155 in docket No. 3582-91. Decision will be entered for petitioner in docket No. 25324-91. Footnotes
1. The record does not reveal the size of that portion or the terms of the lease.↩
2. The lease was restated on Dec. 1, 1990, to confine its coverage to those portions of the land not included in the estates for years which are involved herein.↩
3. The relative values of the estates for years and the remainder interests were determined by using the tables at sec. 20.2031-7(f), Estate Tax Regs. Respondent does not challenge these values or otherwise contend that the amounts paid did not represent the fair market value of the interests acquired.↩
4. An exception to the general rule is sec. 167(e), originally enacted as sec. 167(r) by the Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, sec. 7645, 103 Stat. 2106, 2381-2382, which disallows any depreciation deduction for a term interest acquired after July 27, 1989, where a related person, as described in sec. 267(b) or (e), holds the remainder interest.↩
5. As this Court has previously noted, there is some controversy as to whether these ratable deductions are allowable as depreciation or amortization under sec. 167 or as amortization under secs. 162 and 212. See Gordon v. Commissioner, 85 T.C. 309, 322↩ n.6 (1985). We therefore simply acknowledge that ratable deductions of some nature are permitted the purchaser of a term interest in property which is used in a trade or business or held for the production of income. For purposes of discussion, we use the terms depreciation and amortization interchangeably.
6. We are not unaware that the Kammerzells purchased their interests in the land from Mr. Kammerzell's parents, a fact which adds to the inherently suspect nature of the transactions at issue. However, respondent does not contend, and there is no evidence of record, that the transactions were not conducted at arm's length.↩
7. See also Uniroyal Incorporated and Consolidated Subsidiaries v. Commissioner, T.C. Memo. 1993-214↩.