**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 3 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

JULIAN P. KORNFELD,

        Petitioner-Appellant,

    v.

COMMISSIONER OF INTERNAL
REVENUE,

        Respondent-Appellee.

No. 96-9016

---

APPEAL FROM THE UNITED STATES TAX COURT
(T.C. No. 13169-95)

---

Submitted on the briefs:

Tom M. Moore and Clarke L. Randall of Kornfeld Franklin Renegar & Randall,
Oklahoma City, Oklahoma, for Petitioner-Appellant.

Richard Farber and Thomas J. Sawyer, Attorneys, Tax Division, Department of Justice,
Washington, D.C., for Respondent-Appellee.

---

Before SEYMOUR, Chief Judge, LOGAN and MURPHY, Circuit Judges.

---

LOGAN, Circuit Judge.

---

This appeal presents the question whether the Tax Court correctly relied on the substance over form doctrine in determining that Julian P. Kornfeld (taxpayer) was not entitled to a federal income tax deduction for amortization of a life interest in bonds that he purportedly jointly purchased with his daughters and secretary, who took remainder interests.

> The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted. . . .  But the question for determination is whether what was done, apart from the tax motive, was the thing which the statute intended.

Gregory v. Helvering, 293 U.S. 465, 469 (1935).[1]

I

When a taxpayer purchases a bond the normal rule is that the security is not depreciable or amortizable for federal income tax purposes.[2]  5 J. Mertens, Law of Federal Income Taxation § 23A.93 (1990).  Instead the taxpayer has a cost basis in the bond and when the bond matures or is called or sold the money received is treated as a nontaxable return of capital to the extent of that basis.  The interest paid while the taxpayer holds the bond is taxable income unless, as here, it is tax exempt.  See Internal

---

[1]  After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9.  The case is therefore ordered submitted without oral argument.

[2]  In the case of a taxable--not a tax-exempt--bond, the amount of the amortizable bond premium for the tax year may be allowed as a deduction.  IRC § 171.

2

Revenue Code (IRC) § 1001. If the taxpayer owns the bond at his death its value is included in his estate for federal estate tax purposes. Id. § 2033. If during his lifetime he should transfer ownership of the bond by gift reserving income for his life the entire value of the bond would still be included in his estate for federal estate tax purposes. Id. § 2036. Additionally, because the gift would be of a future interest the $10,000 per donee annual gift tax exclusion of IRC § 2503(b) would not apply.

Taxpayer, an experienced tax attorney, apparently believed he found a way to structure purchases of tax-exempt bonds to give him other income and estate and gift tax benefits. His method was to enter into agreements (through a revocable trust he created) with his daughters, Nancy and Meredith, to jointly purchase the bonds with taxpayer buying a life estate and his daughters buying the remainder interests in the following manner: Taxpayer ordered bonds from Prudential-Bache Securities Inc. which billed his trust. Under the agreements with the remaindermen taxpayer determined the value of his life estate based on Internal Revenue Service (IRS) estate and gift tax actuarial tables. Taxpayer's trust paid Prudential-Bache the value of his life estate interests. Taxpayer contemporaneously sent checks to his daughters in the amount of the purchase price of their shares. The daughters would then pay Prudential-Bache for the sum representing their remainder interests.[3]

_____

[3] After the first transaction taxpayer became concerned about his daughter Meredith's precarious financial situation and he did not want her interests to be attached

(continued...)

3

After taxpayer executed two agreements, Congress amended the Code to provide that "[n]o depreciation deduction shall be allowed . . . to the taxpayer for any term interest in property for any period during which the remainder interest in such property is held (directly or indirectly) by a related person." IRC § 167(e). A "term interest in property" is defined to include a life estate, and "related persons" includes taxpayers' children. Id. §§ 167(e), 267, 1001(e)(2). Taxpayer modified the later agreements so that rather than purchase the entire remainder interest Nancy would purchase a second life estate to take effect after taxpayer's death; taxpayer's secretary, Patsy Permenter, purchased the final remainder interest with funds given her by taxpayer. Taxpayer reported the gifts to Nancy, Meredith and Permenter on belatedly filed gift tax returns, claiming the $10,000 annual exclusion for each donee and using his lifetime exemption (unified credit) to avoid paying any tax. See IRC §§ 2010 and 2505. The tax-exempt bonds at issue here had a combined face value of $1,510,000. The actuarial value of taxpayer's life estate based on IRS tables was about $1,262,000.

---

[3](...continued)
by her creditors. Thus the second, third, and fourth agreements included Nancy but not Meredith.

The bonds apparently were held in street name with no indication of the division of ownership between the life tenant and the remaindermen. The agreements also provided that evidence of ownership "may also be held by the First Interstate Bank of Oklahoma, as custodian" in such names or forms "as the custodian shall deem appropriate and convenient." Ex. 4-D. The parties agreed to sell, assign, or pledge only on joint direction of all parties, and to give to each other a right of first refusal at the valuations established by the IRS regulations in the event any one sought to dispose of his or her interest.

We have only an income tax question before us. Taxpayer's federal income tax returns for the years 1990 and 1991 reflected tax-exempt interest income on the bonds of $118,972 and $122,974, respectively. Taxpayer also claimed an amortization deduction on his life estate in the bonds of $56,203.94 for each year. After an audit the Commissioner disallowed the amortization deductions. Taxpayer petitioned the Tax Court for a redetermination of the deficiency and before trial the parties stipulated to the facts and presented the case on that fully stipulated record.

Relying on the substance over form doctrine, the Tax Court found that the taxpayer had acquired the entire ownership interest in the bonds and then made a gift of the remainder interests to his daughters and Permenter. Thus, the Tax Court upheld the Commissioner's determination that taxpayer was liable for income tax deficiencies of $11,803 for 1990 and $13,122 for 1991.

II

Taxpayer first asserts we must review the Tax Court's decision de novo because the parties submitted the case to the Tax Court on a fully stipulated record, citing ABC Rentals of San Antonio, Inc. v. Commissioner of Internal Revenue, 97 F.3d 392 (10th Cir. 1996). In ABC Rentals, we stated that "given the stipulated facts, the question of whether the [rental] inventory fits into the exception [] presents a legal issue regarding application and interpretation of [the applicable statute]," 97 F.3d at 395. We went on to note, however, that even if the facts had not been stipulated, that case presented "a mixed

5

question of law and fact in which the legal issues predominate." Id. at 395-96. In contrast, in a case involving whether a transfer of contract rights was genuine, we said that findings "as to what is substance in a transaction are to be treated as questions of fact," Wisebart v. Commissioner, 564 F.2d 34, 37 (10th Cir. 1977), and thus reviewed under the clearly erroneous standard. See Anderson v. City of Bessemer, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence the factfinder's choice between them cannot be clearly erroneous. . . . This is so even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts."). In the instant case, although the facts were stipulated, the Tax Court was still charged with making ultimate findings of fact as to the substance of the transaction. We do not need to determine which standard of review is applicable here, however, because under either standard we hold the Tax Court correctly disallowed the amortization deduction.

III

The taxation scheme set out in the Internal Revenue Code is complicated and the tax consequences of many transactions depend on form, how the transaction is structured. At the same time it has long been held that "[t]he incidence of taxation depends upon the substance of a transaction. . . . To permit the true nature of a transaction to be disguised by mere formalisms, which exist solely to alter tax liabilities, would seriously impair the effective administration of the tax policies of Congress." Commissioner v. Court Holding

6

Co., 324 U.S. 331, 334 (1945). Ascertaining the "true nature" of the transaction while adhering to neutral principles of statutory construction is often difficult. That is exemplified by the instant case, in which the Tax Court opinion and the two others closest factually--one relied on by taxpayer and the other by the Commissioner--were authored by the same judge. Compare Gordon v. Commissioner, 85 T.C. 309 (1985) (where taxpayer gave family trust funds to purchase remainder interests in bonds for which he purchased a life estate, and claimed amortization deduction, Tax Court determined that in substance taxpayer purchased the bonds and gave remainder to trust) with Richard Hansen Land, Inc., 65 T.C.M. (CCH) 2869 (1993) (distinguishing Gordon because although corporation was source of funds for shareholders' purchase of remainder interests, the corporation that purchased a term interest did not use shareholders' bank accounts as "mere stopping place" for funds).

There would be no doubt of taxpayer's right to annual amortization deductions had he acquired only a limited interest in the bonds in arm's length commercial transactions in which the remainder interests had been retained, or independently acquired, by persons having no connection to taxpayer. A taxpayer may amortize a limited interest in property if the "intangible asset is known from experience or other factors to be of use in the . . . production of income for only a limited period, the length of which can be estimated with reasonable accuracy." Treas. Reg. § 1.167(a)-3. Here, however, one hundred percent ownership of the bonds was acquired from or through Prudential-Bache in a market

7

transaction; but taxpayer presented no evidence that any brokerage firm would sell only a life estate in the bonds. The division of the interests between taxpayer's life estate and the remainders was made by the separate agreements between taxpayer and his daughters and secretary; the valuations were not determined by market forces but in accordance with IRS valuation tables formulated for estate and gift tax purposes. The broker sent one bill to taxpayer's trust, and taxpayer calculated the respective shares based on the IRS tables, and then immediately gave the remaindermen gifts of nearly the exact amounts they needed to pay their shares. The parties stipulated that "[t]he purpose of these [gift] checks was to provide Meredith and Nancy with sufficient monies to pay their respective proportionate shares of the purchase price." Doc. 14 at 7.

Taxpayer tries to focus the question before us on the cash nature of the gifts to the daughters and secretary. He argues that they had sufficient independent assets to make their proportionate payments, and that they were not legally obligated to use the money gifted to them to make the payments for which they were obligated under their agreements. Thus he would have the court treat the gifts as separate from the purchases of the bonds, and he would have the court regard the remainder purchases in the bonds as independent investor decisions.

The government has applied, and the Supreme Court expressly sanctioned, a step-transaction doctrine to deal with purportedly separate transactions that the government believes should be treated as integrated. See Commissioner v. Clark, 489 U.S. 726, 738

8

(1989). "Under this doctrine, interrelated yet formally distinct steps in an integrated transaction may not be considered independently of the overall transaction. By thus linking together all interdependent steps with legal or business significance, rather than taking them in isolation, federal tax liability may be based on a realistic view of the entire transaction." Id. (quotation and citation omitted). In Associated Wholesale Grocers, Inc. v. United States, 927 F.2d 1517 (10th Cir. 1991), we identified three step transaction tests: "end result," "interdependence," and "binding commitment."

Taxpayer essentially argues that the facts here meet the "binding commitment" test because his daughters and secretary were not legally obligated to use his gifts to purchase the bonds. But in Associated Wholesale Grocers we stated that this test is seldom applied. See id. at 1522 n.6. We thus examine the facts under the other step transaction tests. The "end result" test amalgamates into a single transaction separate events which appear to be component parts of something undertaken to reach a particular result. Id. at 1523. The instant case would appear clearly to satisfy the "end result" test. The "interdependence test" focuses on the relationship between the steps, whether under a reasonably objective view the steps were so interdependent that the legal relations created by one of the transactions seem fruitless without completion of the series. Id. Although the gifts here could stand on their own without relation to the investments, it is difficult to conceive that the parties would have made the investments as they did, or that they would

9

have agreed to the valuations between life estates and remainders, in the absence of the gifts taxpayer made. Thus this case would seem to satisfy the "interdependence" test.

We conclude that the Tax Court properly characterized the transactions in the instant case as impermissible attempts to create amortizable term interests out of nondepreciable property. We agree with the Gordon opinion that "it is important to note that what is involved in this case is a simultaneous joint acquisition of income interests and remainder interests where the consideration moved to a third party who was not in any way concerned with the arrangements between the joint acquirers. . . . [and that] it is appropriate to take into account the fact that the participation of the acquirer of the remainder interest is an essential element in affording the acquirer of the income interest the opportunity to obtain the tax benefit of an amortization deduction." 85 T.C. at 325.

We also agree with the Gordon opinion that where, as here, the "parties to the transactions in question are related, the level of skepticism as to the form of the transaction is heightened, because of the greater potential for complicity between related parties in arranging their affairs in a manner devoid of legitimate motivations." Id. (quotation and citation omitted).[4] Complicity among the parties is further supported by the following: the parties established their respective purchase obligations by IRS tables

---

[4] Although Permenter is not a natural object of taxpayer's bounty in the same sense as his daughters, she is his long time secretary, cotrustee of his revocable trust, and taxpayer made contemporaneous gifts to her to enable the purchases of her remainder interests. In such circumstances it is not inappropriate to treat her in the same category as a related party.

10

that are only periodically adjusted and which reflect market values only in a general way; the parties committed to acting jointly in disposing of their interests, agreeing that if one wanted to sell he or she must offer to the others at the IRS table valuations; and that there is no external manifestation of their separate ownerships (as would be the case of recorded real estate deeds specifying term interests) to permit marketing of a limited interest to outside parties. Cf. Schultz v. United States, 493 F.2d 1225 (4th Cir. 1974) (brothers' gifts of shares in closely held corporation to each other's children were reciprocal transactions made to enlarge gifts to own children and thus gift tax exclusion was properly disallowed).

Finally, although there was no legal requirement that remaindermen would use the gifts of money to purchase the bonds, taxpayer stipulated that his intention in making the gifts was to enable the donees to make the purchases. We question the financial capacity of at least some donees, noting taxpayer ceased making daughter Meredith a party for fear her creditors might attach her interests. And there is no reason these remaindermen would question making the investments when taxpayer was giving them the funds to make their purchases. Expressed colloquially, one does not look a gift horse in the mouth.

AFFIRMED.

11