Jack FLETCHER, Plaintiff-Appellant,

v.

WARDEN, UNITED STATES PENITENTIARY, LEAVENWORTH, KANSAS, Defendant-Appellee.

Tommy J. HART, Plaintiff-Appellant,

v.

Irl E. DAY, Warden, Defendant-Appellee.

Askofu Lester M. JOHNSON, Plaintiff-Appellant,

v.

The ATTORNEY GENERAL OF the UNITED STATES, Benjamin Civiletti, U. S. Bureau of Prisons Director, Norman A. Carlson, and the Warden of the Leavenworth USP, Defendants-Appellees.

Nos. 79–1156, 79–2062 and 80–1749.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Nov. 19, 1980.

Decided Feb. 13, 1981.

David J. Gottlieb of the Kansas Defender Project, Lawrence Kan., for plaintiffs-appellants Jack Fletcher and Askofu Lester M. Johnson.

Leonard D. Munker, Federal Public Defender, District of Kansas, Kansas City, Kan., for plaintiff-appellant Tommy J. Hart.

Alleen S. Castellani, Asst. U. S. Atty., for defendant-appellee in all cases.

James P. Buchele, U. S. Atty., Topeka, Kan., with her on briefs, for defendant-appellee in cases 79–2062 and 80–1749.

James P. Buchele, U. S. Atty. and Robert S. Streepy, Asst. U. S. Atty., Topeka, Kan., on brief, for defendant-appellee in 79–1156.

Before McWILLIAMS and LOGAN, Circuit Judges, and CHRISTENSEN, Senior District Judge.*

PER CURIAM.

Each of these appeals involves in varying contexts the interpretation by the United States District Court for the District of Kansas of 18 U.S.C. § 5003(a) concerning the transfer of state prisoners to federal custody.[1]

### No. 79–1156—*Fletcher*

Fletcher is now serving a substantial prison term by reason of his conviction of a criminal offense against the State of Dela-

---

* Of the United States District Court for the District of Utah, sitting by designation.

1. The Attorney General, when the Director shall certify that proper and adequate treatment facilities and personnel are available, is hereby authorized to contract with the proper officials of a State or Territory for the custody, care, subsistence, education, treatment and training of persons convicted of criminal offenses in the courts of such State or Territory: *Provided*, that any such contract shall provide for reimbursing the United States in full for all costs or other expenses involved.

ware. He was transferred to federal custody in the United States Penitentiary at Leavenworth, Kansas, pursuant to a contract between Delaware officials and the Attorney General of the United States in reliance on 18 U.S.C. § 5003, *supra*. In his *pro se* petition to the federal district court for a writ of habeas corpus, he expressly did "not consent or object to the right of the State of Delaware to enter into agreement with the federal government" but objected to his transfer without a full hearing to determine whether he was in need of "specialized treatment" as required by the interpretation of section 5003(a) in *Lono v. Fenton*, 581 F.2d 645 (7th Cir. 1978) (*en banc*).

In dismissing Fletcher's petition the district court agreed with the dissenting opinion of Judge Bauer in *Lono*, 581 F.2d at 648, that the statute does not restrict or limit the use of federal prison facilities to convicted state offenders in need of treatment. The district court concluded, accordingly, that the petitioner had no right to a pretransfer hearing under either the statute or the Due Process Clause. *Fletcher v. Warden*, 467 F.Supp. 777 (D.Kan.1979).

■ Following this appeal, appellant's direct criminal appeal was decided. *Fletcher v. State*, 409 A.2d 1254 (Del.1979). He was returned to a state prison for resentencing, where he remains. He has been advised of no plans for his transfer to federal custody at a later date.

Appellee argues that because of the last-mentioned circumstances this appeal is moot. We agree.

In this non-class action, there is no reasonable expectation that the alleged wrongful transfer of the prisoner will recur, and certainly there is nothing to indicate that the transfer issue will evade or, indeed, is evading judicial review. *Preiser v. Newkirk*, 422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975). *Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980), primarily relied upon by appellant on the is-

sues of mootness, is distinguishable. There the issue involved possible recommitment to a mental hospital, with no indication that the petitioner's condition was not permanent. All parties had agreed that the case was not moot, the state advised the court that "there is a very real expectation of transfer," and the district court had found that Jones was subject to and was in fact "under threat of being transferred to the state mental hospital. . . ."

The holding of mootness may make little real difference to appellant in the present case, since application to him of our ruling in *Johnson, infra*, would be fatal to his claim on the merits anyway. Yet the constitutional imperative of a subsisting case or controversy must briefly postpone our consideration of the meaning of the statute.

### No. 79–2062—*Hart*

■ Hart petitioned the federal district court for a writ of habeas corpus on the contentions that, notwithstanding his detention solely for a conviction under the laws of Connecticut, he is presently being required to serve his state sentence in the United States Penitentiary at Leavenworth, Kansas; that he is not in prison by virtue of any act of Congress, it not having been determined that he was in need of specialized treatment, an alleged prerequisite under 18 U.S.C. § 5003; and that he is being denied access to Connecticut legal materials required to present properly his application for post-conviction relief. The district court refused habeas corpus relief, ruling as to the transfer issue that Hart had not exhausted his state remedies; it also held that the case lacked merit in light of its prior decision in *Fletcher v. Warden, supra*.

In reviewing the *Hart* judgment we do not reach the latter holding. By reason of 28 U.S.C. § 2254(b) and in light of *VonEiselein v. Taylor*, 344 F.2d 919 (10th Cir. 1965), the appellant's failure to exhaust state remedies forecloses consideration of the merits of his petition.[2]

---

2. We recognize that the exhaustion doctrine is a matter of comity and not jurisdiction. And we are mindful of the arguments that petition-

er's complaint is not of state action, but of detention by federal authorities without legal basis, and that there are practical difficulties,

■ Hart's denial of access claim is implicitly covered by the district court's ruling, although not separately addressed. Administrative requests for Connecticut legal materials were refused. But unsuccessful pursuit of administrative remedies did not obviate the necessity of exhausting state judicial remedies.[3]

### No. 80–1749—*Johnson*

In *Johnson* a *pro se*-in forma pauperis petition or complaint sought habeas corpus, declaratory, injunctive and damage relief on the claims that appellant's transfer from a Delaware state prison for reasons other than the need for specialized treatment and the Government's failure to provide a showing that appellant was in need of specialized treatment available only in the federal system violated 18 U.S.C. § 5003 and due process. Relying upon its decision in *Fletcher, supra,* the district court dismissed Johnson's action as frivolous and denied

leave to appeal in forma pauperis.[4] This court granted such leave and appointed counsel to represent appellant.

The exhaustion doctrine was not relied upon by the trial court in this case and, indeed, would not preclude consideration of Johnson's complaint in its civil rights aspects. *Wilwording v. Swenson,* 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971). *Cf. Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

The judgment of the district court with reference to the interpretation of section 5003 is affirmed essentially for the reasons stated by it in *Fletcher.* We find little justification for adding much to Judge Rogers' well-considered opinion. It is reflective of the clear weight of authority. One of the most recent cases on the subject cites with approval *Fletcher* and reviews other decisions to the same effect. *Howe v. Civiletti,* 625 F.2d 454, 456 (2d Cir. 1980), *cert.*

---

because of this allegedly unlawful detention in Kansas, in prosecuting state remedies in Connecticut. However, *VonEiselein* was decided in the same general context and cites with approval *Battista v. Kenton,* 312 F.2d 167 (2d Cir. 1963), which expressly treated a petitioner in like circumstances as a "state prisoner" on an agency theory for the purposes of the exhaustion requirement.

In this case pragmatism as well as authority confirms such a course. Even if we were to address the validity of Hart's federal custody on the merits, a question of the authorization under Connecticut's law to make the transfer, which Hart's counsel suggested during oral argument, would remain and would have to be presented to the state courts. *E. g., Rebideau v. Stoneman,* 398 F.Supp. 805 (D.Vt.1975), *aff'd,* 575 F.2d 31 (2d Cir. 1978).

3. The administrative response suggested a practical means for access by Hart to the courts of the state, as well as to essential legal materials in connection with state proceedings:

> Your request to be provided with the following law books: Connecticut State Criminal and Civil Statutes, Rules of Evidence, Rules of Criminal Procedure, Rules of Civil Procedure, Rules of Appellant [*sic*] Procedure, Connecticut Forms, Connecticut Digest and a set of Reporters that have Connecticut State Appeals, has been referred to this office by the Attorney General's Office of the State of Connecticut.
> ... I, too, would like to have access to all of the books you describe in your request. I do not.

> Perhaps a more sensible way of handling your appeal or habeas corpus matter would be for you to contact the Public Defender Office in the Court from which you were sentenced and have them study the possibilities for such post-conviction review.

Letter to Hart from the Chief Appellate Counsel, Office of the Chief State's Attorney, State of Connecticut (Feb. 28, 1979).

*See Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Potts v. Carlson* (D.Kan. No. 74–124–C3, Jan. 1975, *aff'd* No. 75–1455 (unpublished) (10th Cir. Feb. 13, 1976)).

4. "The court ... may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." 28 U.S.C. § 1915(d).

There is difficulty in characterizing Johnson's claim as frivolous in the broad sense of the impossibility of making a rational argument on the facts or law in support of it. *See Martinez v. Aaron,* 570 F.2d 317 (10th Cir. 1978) (*en banc*). The distinction between that reference and dismissal for lack of merit because of the controlling effect of a precedent in the particular jurisdiction, is not significant here, however. The sole question was a matter of law as to which under the circumstances there was no practical justification for a hearing before the district court. *Cf. Collins v. Hladky,* 603 F.2d 824 (10th Cir. 1979).

*granted* —— U.S. ——, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981).

██ Both of the last-mentioned cases conclude, in short, that the narrow reading of section 5003(a) as espoused by appellant has no basis in the language of the statute; that contracts not only for "treatment" but for the "custody, care, subsistence, education, treatment and training" of convicted persons are authorized; that nothing in the grammatical construction affords "treatment" the primacy for which the prisoner contends; that while the legislative history of the original provision may be ambiguous or conflicting, this is largely internal, without alteration of the broad authority granted for contracting; and that the uniform administrative interpretation since enactment without objection by Congress is indicative of continuing congressional intent and is entitled to deference.

Among other circumstances which Judge Rogers mentioned in the latter connection was the 1965 addition of subsection (d) to § 5003, Pub.L. 89–267, defining the term "state" so as to include the Canal Zone within the section. It was noted that Congress made this change without amending the substance of subsection (a), indicating approval of the long-standing administrative construction of the statute. We would add that the case against appellant's interpretation is still stronger: The legislative history of the Canal Zone Amendment expressly supports the Bureau of Prison's construction of section 5003(a) that a finding of need for specialized treatment is not required before a state prisoner may be transferred to federal custody.[5]

---

5. The legislative history of this amendment is brief but consistent with the interpretation of the Bureau of Prisons. Indeed, instead of questioning in any way that interpretation, Senate Report No. 799 (Armed Services Committee), U.S.Code Cong. & Admin.News 1965, p. 3595 contains no suggestion that § 5003(a) limited transfers to those prisoners who might require "treatment". On the contrary, the committee report referred to the broad purposes of transfer and specified a number of objectives wholly inconsistent with the idea that the section covered transfers for only the purpose of special

---

No. 79–1156 is remanded to the district court for dismissal as moot. In No. 79–2062, the judgment dismissing the petition for a writ for failure to exhaust state remedies is affirmed. In No. 80–1749, the judgment dismissing the action in the light of Judge Rogers' decision in *Fletcher* is affirmed.

IT IS SO ORDERED.

### APPENDIX

S.Rep.No.799, 89th Cong., 1st Sess. (1965), *reprinted in* [1965] U.S.Code Cong. & Ad. News 3595 *et seq.*

The Committee on Armed Services, to which was referred the bill (H.R. 724) to authorize the transfer of certain Canal Zone prisoners to the custody of the Attorney General, having considered the same, reports favorably thereon without amendment and recommends that the bill do pass.

### PURPOSE

This bill would permit the transfer of persons convicted of offenses in the Canal Zone to ... prisons within the United States.

### EXPLANATION

The Canal Zone Penitentiary has a population that averages 90 to 100 prisoners of whom not more than about ten are citizens of the United States. *The small number of inmates makes the operation of a rehabilitation program difficult. The location of the penitentiary complicates possible visits from relatives and*

---

treatment. We have quoted the most pertinent contents of the Armed Services Committee Report with supplied emphases in the Appendix.

While it cannot always be presumed that Congress, in making a minor addition to a statute without making substantive changes, has adopted the prior administrative interpretation of the statute (*see SEC v. Sloan*, 436 U.S. 103, 120–21, 98 S.Ct. 1702, 1712–1713, 56 L.Ed.2d 148 (1978)), such an inference is buttressed where, as here, the legislative history contains an implicit recognition and approval of that interpretation.

*friends. Rehabilitation programs and visits are both important elements in accomplishing prisoner reform.*

This bill would provide authority for the Governor of the Canal Zone to contract with the Attorney General of the United States for the transfer to the custody of the Attorney General of prisoners who are citizens of the United States. The law requires that such contracts provide for reimbursing the United States in full for all costs and other expenses involved.

The American citizens imprisoned in the Canal Zone normally are persons who are in military service when convicted or who were seamen or other persons in a transient status at the time of conviction. The inmates all were convicted of felonies and hence there is no likelihood of returning prisoners with very short sentences.

### COST

The Canal Zone Government estimates that only three or four persons a year would be returned to the United States for imprisonment....

## DEPARTMENTAL RECOMMENDATION

The letter from the Assistant to the Governor of the Canal Zone dated February 23, 1965, that is printed below and *made part of this report* shows that the Canal Zone Government and the Department of Justice concur in recommending enactment of this bill and that the Bureau of the Budget has no objection to it.

．　　　．　　　．　　　．　　　．

Canal Zone Government,
Washington, D.C., February 23, 1965.
Hon. Herbert C. Bonner
Chairman, Committee on Merchant Marine and Fisheries,
House of Representatives.

Dear Mr. Chairman: Reference is made to your letter dated January 18, 1965, requesting a report on H.R. 724, a bill to authorize transfer of certain Canal Zone prisoners to the custody of the Attorney General....

．　　　．　　　．　　　．　　　．

The subject bill would amend section 5003 of Title 18, United States Code, so as to make that section applicable to the Canal Zone....

．　　　．　　　．　　　．　　　．

The circumstance that *a great preponderance of the inmates are Panamanian citizens or persons admitted to Panama for permanent residence makes it difficult in terms of economic justification to establish any type of programs that might be specifically suited to the needs of the small group of U.S. citizens.*

In addition to the foregoing considerations, cases arise from time to time indicating that transfer of a U.S. citizen prisoner to the United States to the custody of the Attorney General *would clearly be in the best interests of the prisoner in that it would return the prisoner to his home environment, thus permitting visits from relatives and friends and, in general, improve the likelihood of his successful rehabilitation. Moreover, the likelihood of making appropriate arrangements for parole of a U.S. citizen prisoner who is not a Canal Zone resident would in the normal case be greatly enhanced by his transfer to the custody of the Attorney General.*

*... The legislative history of title 18, United States Code, section 5003* (see 1952 U.S.Code Cong. and Adm.News, p. 1420), *indicates that the section was enacted* because State officials had frequently requested the Bureau of Prisons to undertake the *custody, treatment and training of State prisoners where specialized types of institutions and training programs were needed but were not available in the States. As discussed above, similar considerations make it desirable to extend the section to the Canal Zone.* [Emphasis added.]