# UNITED STATES COURT OF APPEALS

## TENH CIRCUIT

---

ABC RENTALS OF SAN ANTONIO,
INC.; DAVID R. PETERS; DIANA L.
PETERS; JOHN P. PARSONS;
MELBA R. PARSONS,

    Petitioners - Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE,

    Respondent - Appellee.

_____

GRAUEL ENTERPRISES, INC.,

    Amicus Curiae.

Nos. 95-9008
95-9009
95-9010
(Consolidated)

---

## ORDER

Filed April 14, 1998

---

Before **PORFILIO**, **KELLY** and **BRISCOE**, Circuit Judges.

---

This matter is before the court on appellant's petition for rehearing and suggestion for rehearing en banc filed November 12, 1996. The petition for rehearing is granted. Therefore, the court's opinion filed September 27, 1996, is vacated and a revised opinion is attached. Appellant's suggestion for rehearing

en banc was circulated to the panel members and the active judges of the court as required by Fed. R. App. P. 35(b). No member of the panel nor judge in active service on the court requested a poll. The suggestion for rehearing en banc is denied.

Appellee's motion for clarification of this court's opinion filed on November 12, 1996 is granted.

Entered for the Court
PATRICK FISHER, Clerk of Court

By:

Keith Nelson
Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 14 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

ABC RENTALS OF SAN ANTONIO,
INC.; DAVID R. PETERS; DIANA L.
PETERS; JOHN P. PARSONS;
MELBA R. PARSONS,

    Petitioners - Appellants,

    v.

COMMISSIONER OF INTERNAL
REVENUE,

    Respondent - Appellee.

_____

GRAUEL ENTERPRISES, INC.,

    Amicus Curiae.

Nos. 95-9008
95-9009
95-9010
(Consolidated)

---

## APPEAL FROM THE UNITED STATES TAX COURT
### (T.C. Nos. 20689-91, 20690-91 and 20691-91)

---

Timothy P. O'Sullivan (Lyndon W. Vix and John R. Gerdes with him on the brief), of Fleeson, Gooing, Coulson & Kitch, Wichita, Kansas, for appellants.

Linda E. Mosakowski (Jonathan S. Cohen with her on the brief), Tax Division, Department of Justice, Washington, D.C., for appellee.

Michael J. Henke and Jeffrey W. Ferguson, of Vinson & Elkins, L.L.P., Washington, D.C., for Grauel Enterprises, Inc., amicus curiae.

---

Before **PORFILIO**, **KELLY** and **BRISCOE**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

In these consolidated appeals, we decide whether the rent-to-own industry may properly depreciate its inventory for tax purposes using the income forecast method rather than the Modified Accelerated Cost Recovery System (MACRS) under I.R.C. § 168(f)(1). The Tax Court held that appellants' rent-to-own inventory could not be properly depreciated under the income forecast method, and thus upheld the Commissioner's notice of deficiency.

Based on our analysis of the statutory language and legislative history, we conclude that § 168(f)(1) does not *preclude* use of the income forecast method for property like taxpayers' rent-to-own inventory, provided other conditions are met. Under § 168(f)(1), taxpayers may elect to exclude from the MACRS property that is "properly depreciated" under any method not expressed in a term of years, such as the income forecast method. We conclude I.R.C. § 167 is the measure of whether property is properly excluded under a method not expressed in a term of years. Under the version of § 167 in effect for the 1987 and 1988 tax years at issue, property is properly depreciated under a method not expressed in a term of years if it qualifies as a presumptively reasonable method under § 167(b)(4) and (c), or if the taxpayer can prove the method is a reasonable method of calculating annual depreciation allowances under §167(a). Here, the Commissioner conceded the method is reasonable but did not concede it was properly applied to produce reasonable depreciation allowances or that the taxpayers made a proper election under § 168(f)(1). Accordingly, because the Tax court did not reach the issues of proper election and proper application of the method, we reverse and remand for further proceedings.

<u>Background</u>

At issue are depreciation deductions claimed by two rent-to-own companies on their inventory of rental units for the tax years ending December 31, 1987, and December 31, 1988. ABC Rentals of San Antonio, Inc., (ABC) was a subchapter C corporation for its fiscal year ended May 31, 1987, and was a subchapter S corporation thereafter. John P. Parsons was ABC's sole shareholder. Guaranteed Rental, Inc., (Guaranteed) was a subchapter S corporation and Parsons and Diana L. Peters were shareholders in Guaranteed. Parsons and Peters each filed joint tax returns for the years at issue with their respective spouses, Melba R. Parsons and David R. Peters.

During the years at issue, ABC and Guaranteed operated rent-to-own businesses that leased appliances, furniture, televisions, stereos, and videocassette recorders to customers in Texas. Under the rental agreements, customers leased the rental property for a specified time period, which varied based on the type of property and the number of times the property had been leased. Generally, the initial lease term on a rental unit was between twelve and twenty-one months. If a customer paid the weekly or monthly rental amount for the full term of the rental contract, the customer would obtain full title to the rental property at no additional cost. The customer also had the right under the rental contract to return the property before expiration of the full term with no further obligation. Each particular rental unit would be leased to subsequent customers until a customer retained the unit for the entire lease term and obtained title to the property. On average, ABC and Guaranteed dispose of rental units within two

-3-

years of purchase, and they dispose of about 90% of all rental units within three and one-half years of purchase.

Prior to 1981, rent-to-own companies generally used an eighteen, twenty-one, or twenty-four month straight line method to depreciate their inventory of rental units. With enactment of the Accelerated Cost Recovery System (ACRS) by Congress in 1981 and MACRS in 1986, industry practice has been to calculate the depreciation deduction on rental units using the income forecast method. Under the income forecast method, the yearly depreciation deduction for a particular rental unit is equal to the cost of the rental unit multiplied by a percentage obtained by dividing the income produced by that rental during the year (numerator) by 300% of the cost of the unit (denominator), which represents the total anticipated gross rental revenue for the life of the unit. Under this method, a rental unit is depreciated in full during its income-producing life. When a rental unit leaves the company's inventory and stops producing income, the company ceases claiming a depreciation deduction on that particular unit. Both ABC and Guaranteed used the income forecast method to determine their depreciation deductions for the years in question.

The Commissioner served a notice of deficiency on appellants and disallowed a portion of the depreciation deductions claimed by ABC and Guaranteed, contending the taxpayers were prohibited from using the income forecast method; rather, they were required to calculate their depreciation deductions under MACRS. The Commissioner determined that, under MACRS, the rental inventory had a class life of nine years and the applicable recovery

period was therefore five years. Obviously, this longer recovery period under MACRS results in smaller yearly depreciation deductions. Appellants petitioned the Tax Court to challenge the notices of deficiency. The Commissioner contended the income forecast method was inapplicable to taxpayers' rental units. The Commissioner also contended the taxpayers had not properly elected out of the MACRS and their computation of depreciation under the income forecast method was incorrect because they did not accurately forecast the income expected over the life of the assets and did not make an adjustment for salvage value. The Tax Court upheld the notices of deficiency, holding the rental units could not be properly depreciated under the income forecast method. The Tax Court did not decide whether taxpayers had made a proper election or whether they had applied the income forecast method properly because it concluded taxpayers were prohibited from using the income forecast method to depreciate their rental units.

<u>Discussion</u>

I.

We review tax court decisions "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." I.R.C. § 7482(a)(1). Therefore, we review the tax court's findings of fact under a clearly erroneous standard while questions of law are reviewed de novo. <u>Worden v. C.I.R.</u>, 2 F.3d 359, 361 (10th Cir. 1993).

The parties disagree as to whether this appeal presents a factual or a legal question. The Commissioner argues a determination of whether the rent-to-own

-5-

inventory at issue fits into the exception to MACRS created by I.R.C. § 168(f)(1) is a factual issue regarding the nature of rent-to-own property. Appellants correctly point out, however, that given the stipulated facts, the question of whether the inventory fits into the exception to MACRS presents a legal issue regarding application and interpretation of § 168(f)(1). Even if the facts were not stipulated, this case still would present a mixed question of law and fact in which the legal issues predominate. Because this is a legal question, the Commissioner incorrectly contends appellants had a burden of proof at trial to establish the nature of the inventory.

## II.

Section 167(a) of the Code establishes the right to claim "as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)" of property used in trade or business or property held for the production of income. The amount of the depreciation deduction for tangible property is governed by MACRS, which is set out in I.R.C. § 168. Nevertheless, MACRS does not apply to all tangible property; § 168(f)(1) creates an exception whereby other methods of depreciation than that prescribed by MACRS are permitted. Section 168(f)(1) states in part:

> (f) Property to which section does not apply.--This section shall not apply to--
> (1) Certain methods of depreciation.--Any property if--
> (A) the taxpayer elects to exclude such property from the application of this section, and
> (B) for the 1st taxable year for which a depreciation deduction would be allowable with respect to such property in the hands of the taxpayer, the property is *properly depreciated* under the unit of production method or any method of depreciation not expressed in a term of years.

(Emphasis added.)

The Tax Court correctly concluded, and the parties do not dispute, that the income forecast is a "method of depreciation not expressed in a term of years," as required by § 168(f)(1)(B). The remaining inquiry is whether the rent-to-own inventory is "properly depreciated" under the income forecast method. The government contended, and the Tax Court agreed, that only property whose economic usefulness cannot adequately be measured by its physical condition or the passage of time and that may produce an uneven stream of income based on its popularity is properly depreciated under the income forecast method. This argument is based on the reasoning of Rev. Rul. 60-358, 1960-2 C.B. 68. In that ruling, which predated § 168, the IRS held that television films cannot be adequately depreciated by the usual methods of § 167(b) because their economic usefulness cannot adequately be measured by physical condition or passage of time, and they may produce an uneven stream of income based on their popularity. The IRS limited the income forecast method in its application to television films "and other property of a similar character."

In a series of later revenue rulings, the IRS permitted use of the income forecast method to depreciate motion picture films, Rev. Rul. 64-273, 1964-2 C.B. 62, book manuscripts, patents, and master recordings, Rev. Rul. 79-285, 1979-2 C.B. 91. These rulings also predated the 1981 enactment of § 168 and were based entirely on § 167, which was then the only provision governing depreciation methods. After enactment of § 168, the IRS continued to follow its initial revenue ruling and extended the income forecast method to videocassettes,

Rev. Rul. 89-62, 1989-1 C.B. 78, and video games, Priv. Ltr. Rul. 9323007 (June

11, 1993), on the ground that they are similar to television films.  Taxpayers

could elect under § 168(f)(1) to use the income forecast method rather than the

ACRS.  However, it was not until 1995 that the IRS issued a revenue ruling that

denied use of the income forecast method to depreciate property subject to normal

wear and tear.  Rev. Rul. 95-52, 1995-34 I.R.B. 16 (consumer goods leased under

rent-to-own contracts).[1]

The basis for this ruling seems to be the theory that in enacting § 168(f)(1),

Congress intended to permit a method not expressed in terms of years only if the

method, "before January 1, 1981, was a recognized method within the particular

industry for the type of property in question."  Proposed Treas. Reg. § 1.168-4(b),

49 FR 5940, 5958 (1984).  Under this theory, because pre-1981 revenue rulings

recognize the income forecast method only for films and similar property, the

method was not a recognized method for depreciating rental units in the rent-to-

own industry before enactment of § 168 in 1981, and the taxpayers cannot

properly use that method.

IRS revenue rulings are not binding precedent on this court.  "Unlike

treasury regulations, which are promulgated in accordance with the notice and

---

[1] In Carland v. C.I.R., 90 T.C. 505 (1988), the Tax Court held that the income
forecast method could not be used to depreciate physical assets whose economic
usefulness could adequately be measured by physical condition and passage of time, but
the tax years at issue preceded the ACRS and, in any case, the Eighth Circuit affirmed on
other grounds and expressly declined to decide whether the income forecast method can
ever be appropriate for assets whose usefulness declines over time through normal wear
and tear.  Carland v. C.I.R., 909 F. 2d 1101, 1105 (8th Cir. 1990).

comment requirements of the Administrative Procedure Act, revenue rulings 'do not have the force and effect of law' and therefore are 'accorded less weight then regulations.'" American Stores Co. v. American Stores Co. Retirement Plan, 928 F.2d 986, 994 (10th Cir. 1991) (quoting Flanagan v. United States, 810 F.2d 930, 934 (10th Cir. 1987)).  Revenue rulings do not have the force and effect of regulations and may not be used to alter the plain language of a statute.  C.I.R. v. Schleier, 115 S. Ct. 2159, 2167 n. 8 (1995).

Revenue rulings are given considerable weight when they are issued contemporaneously with the enactment of the statute and have been in long use, and the statutory language has been reenacted without change, indicating apparent congressional satisfaction with the prevailing interpretation.  See Davis v. United States, 495 U.S. 472, 481-85 (1990) (legislative reenactment doctrine as applied to revenue rulings).  See generally Linda Galler, Emerging Standards for Judicial Review of IRS Revenue Rulings, 72 B.U.L. Rev. 841 (1992).  Here, the rulings were not contemporaneous with the enactment of either § 167 or § 168.  Although the IRS for thirty years has permitted the income forecast method for movies and similar property, and has indicated the method would be permitted only for such property, it only recently ruled the method cannot be used for property unlike movies.  Section 168 was enacted after the initial revenue rulings, but § 167, the basis for those rulings, has not been reenacted.  Congress has simply left it unchanged.  The "legislative reenactment" doctrine is inapplicable here.

In any case, reenactment without change in relevant statutory language and mere Congressional inaction are at best unreliable indications of Congressional

intent to adopt an administrative construction of a statute.  See Central Bank of Denver v. First Interstate Bank of Denver, 114 S. Ct. 1439, 1452-53 (1994); C.I.R. v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955).  See also S.E.C. v. Sloan, 436 U.S. 103, 120-21 (1978); United States v. Board of Com'rs of Sheffield, 435 U.S. 110, 134 (1978).  The inference of Congressional approval is stronger when legislative history contains some indication that Congress was aware of and approved the administrative construction.  See Central Bank, 114 S. Ct. at 1452-53; United States v. Riverside Bayview Homes, 474 U.S. 121, 137 (1985); Fletcher v. Warden, United States Penitentiary, 641 F.2d 850, 854 (10th Cir.), cert. denied 453 U.S. 912 (1981).

We find no indication in the legislative history of § 168 that Congress approved limitation of the income forecast method or § 168(f)(1) to movies and similar assets, or that it was even aware of the revenue rulings.  To the contrary, the legislative history suggests that Congress intended to permit taxpayers to exclude "most property" from the ACRS and MACRS under § 168(f)(1).  S. Rep. No. 144, 97th Cong., 1st Sess. at 82-83 (1981), reprinted in 1981 U.S.C.C.A.N. 105.  See H.R. Conf. Rep. No. 841, 99th Cong., 2d Sess. at 106 (1986), reprinted in 1986 U.S.C.C.A.N. 4075; S. Prt. 98-169, 98th Cong., 2d Sess., at 467 (1984), (quoted in ABC Rentals of San Antonio v. C.I.R., 1994 WL 682914, *20 (Tax Court 1994).

Nor does the legislative history of amendments to § 167 show Congressional approval of the revenue rulings.  Congress was aware of the revenue rulings permitting the use of the income forecast method to depreciate

television films and movies when it made a minor technical amendment to § 167(b) in the Tax Reform Act of 1976, Pub. L. No. 94-455, § 1906(b)(13)(A), 90 Stat. 1520.[2] However, although Congress was concerned about movie industry tax shelters to which the income forecast method contributed, it did not consider whether the method was or should be limited to property similar in character to movies. See H.R. Rep. No. 658, 94th Cong., 2d Sess. 116-18 (1976), reprinted in 1976 U.S.C.C.A.N. 2897.

As part of the Small Business Job Protection Act of 1996, Pub. L. No. 104-188, § 1604, Congress has added rules to § 167 to govern use of the income forecast method. The House Ways and Means Committee Report on this legislation noted the revenue rulings permitting use of the income forecast method for films and similar property, as well as the two judicial decisions[3] holding the method inapplicable to property subject to ordinary wear and tear. However, the report expressed neither approval nor disapproval of those decisions and, although some special provisions apply only to movies and similar types of property, the new provisions do not limit the method to those types of property. Moreover, the report indicated the scope of § 168(f)(1) was broad: "MACRS does not apply to certain property, including any motion picture film, video tape, or sound recording *or to [any other] property if the taxpayer elects to exclude such*

_____

[2] The earlier version had provided that the Secretary of the Treasury "or his delegate" could promulgate regulations for computing depreciation; the amendment struck the phrase "or his delegate."

[3] The cases noted in the report are Carland, 90 T.C. 505, and the Tax Court opinion in this case.

*property from MACRS and the taxpayer applies a* unit-of-production method or other *method of depreciation not expressed in a term of years*." (Emphasis added.) H.R. Rep. No. 586, 104th Cong., 2d Sess., 1996 WL 272189, *378-79 (1996). This broad construction of § 168(f)(1) is not determinative because the views of Congress on the meaning of a statute passed by an earlier Congress are ordinarily not entitled to great weight. See <u>United States v. X-Citement Video</u>, 115 S. Ct. 464, 471 (1994). However, the report does not indicate Congressional approval of the IRS's narrow construction of § 168(f)(1) and the limitation of the income forecast method to movies and similar property.

In § 1086(a) of the Taxpayer Relief Act of 1997, Pub. L. 105-34, Congress amended § 167 to limit the income forecast method to motion picture films, videotapes, sound recordings, copyrights, books, patents, and other property specified in the regulations. Although the legislative history characterizes this change as a clarification of the property that can be depreciated under the income forecast method, <u>see</u> H.R. Conf. Rep. No. 105-220 (1997), the views of one Congress on the meaning of legislation passed by an earlier Congress are not entitled to great weight. See <u>X-Citement Video</u>, 115 S. Ct. at 471.

The taxpayers contend that any kind of property can be properly depreciated under the income forecast method.[4] Based on our analysis of the

---

[4] Taxpayers argue the nine-year class life to which their rent-to-own inventory is assigned does not reasonably reflect anticipated useful life and anticipated decline in value over time, as required by § 168(I). The record supports this argument; on average taxpayers dispose of rental units within two years of purchase, and dispose of 90% of all units within three and a half years of purchase. However, they do not argue the rental

(continued...)

statutory language and the legislative history, we conclude § 168(f)(1) does not

*preclude* use of the income forecast method for other types of property, such as

taxpayers' rent-to-own inventory.

Although we agree with taxpayers that § 168(f)(1) does not preclude them

from using the income forecast method, we find their reliance on Massey Motors

v. United States, 364 U.S. 92 (1960), to be misplaced. As Massey was a pre-

ACRS case, it has limited relevance to the construction of § 168(f)(1). To resolve

that issue, we must start with the language of the statute. See Good Samaritan

Hosp. v. Shalala, 508 U.S. 402 (1993); Phillips Petroleum Co. v. Lujan, 4 F.3d

858 (10th Cir. 1993). If the language is clear, the inquiry is over. The plain

meaning of statutory language is conclusive, except in the rare case in which

literal construction will produce a result demonstrably at odds with the intention

of its drafters. See United States v. Ron Pair Enterprises, 489 U.S. 235 (1989);

Ute Distribution Corp. v. United States, 938 F.2d 1157 (10th Cir. 1991), cert.

denied 504 U.S. 940 (1992). As we find no ambiguity in the statutory scheme at

issue here, we are not required to defer to the Commissioner's interpretation. See

Chevron, U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 842-43

(1984).

Section 168(f)(1) applies to "any property" if it is "properly depreciated

---

[4](...continued)
units should be treated as three-year property with a three-year recovery period under §
168(e)(1), the shortest period recognized under the MACRS. They argue only that under
§ 168(f)(1), they can elect out of the MACRS and depreciate the units by the income
forecast method.

under . . . any method of depreciation not expressed in a term of years." The broad phrase "any property" supports the taxpayers' position. However, the property must be "properly depreciated" by a method not expressed in a term of years. Section 168(f)(1) does not define "properly depreciated." There is nothing in the statutory language that suggests Congress intended to limit depreciation by methods not expressed in terms of years to property similar in character to movies or otherwise intended to adopt the reasoning of Rev. Rul. 60-358. For the phrase "properly depreciated" to have some meaning, there must be some limitation on use of alternative methods such as the income forecast method. We find that limitation in § 167. In determining the meaning of a statute, the courts look not only at the specific statute at issue, but at its context of related statutes. See Rowland v. California Men's Colony, 506 U.S. 194 (1993); State of Utah v. Babbitt, 53 F.3d 1145 (10th Cir. 1995).

Sections 168 and 167 are closely related. Section 167 was enacted as part of the Internal Revenue Code of 1954. 68A Stat. 51 (1954). It governed depreciation until enactment of § 168 as part of the Economic Recovery Tax Act of 1981, Pub. L. No. 97-34, § 201(a), 95 Stat. 172, 203. Section 167(a) provides that depreciation under § 168 shall be deemed to constitute the reasonable allowance under § 167. Section 168(a) provides that, except as otherwise provided in § 168, the depreciation deduction provided by § 167(a) shall be determined by the ACRS methods of § 168. Since 1981, depreciation of property excluded from § 168 is governed by § 167. See Rev. Rul. 89-62; Rev. Proc. 87-57 § 2.02(2), 1987 C.B. 687; Jacob Mertens, Jr., Mertens Law of Federal Taxation

-14-

§§ 23.21, 23A.10, 23A.66 (1996).  In the absence of a definition in § 168(f)(1),

we conclude that whether property is "properly depreciated" by a method not

expressed in a term of years under § 168(f)(1) depends on whether the property

could be properly depreciated by such a method under § 167.[5]

Until 1990, § 167 provided that methods of depreciation that satisfied

certain requirements were presumptively reasonable.  The version of § 167 in

effect during the tax years at issue (I.R.C. § 167 (West 1988) (amended 1990))

provided:

> (a) General rule--There shall be allowed as a depreciation deduction
> a reasonable allowance for the exhaustion, wear and tear (including a
> reasonable allowance for obsolescence)--
> (1) of property used in the trade or business, or
> (2) of property held for the production of income.
> In the case of recovery property (within the meaning of section 168), the
> deduction allowable under section 168 shall be deemed to constitute the
> reasonable allowance provided by this section, except with respect to that
> portion of the basis of such property to which subsection (k) applies.
> (b) Use of certain methods and rates--For taxable years ending after
> December 31, 1953, the term "reasonable allowance" as used in subsection
> (a) shall include (but shall not be limited to) an allowance computed in
> accordance with regulations prescribed by the Secretary, under any of the
> following methods:
> (1) the straight line method,
> (2) the declining balance method, using a rate not exceeding twice
> the rate which would have been used had the annual allowance been
> computed under the method described in paragraph (1),
> (3) the sum of the years-digits method, and

---

[5] Although the Commissioner rejects the proposition that whether property is properly depreciated by a method not expressed in a term of years is determined by § 167, the IRS has ruled to the contrary.  See Priv. Ltr. Rul. 9015014 (April 13, 1990) (taxpayer may elect to exclude heavy construction equipment from MACRS under § 168(f)(1) and use the actual hours of use method if the annual allowances do not exceed those permitted by § 167(b)(4).  While private letter rulings are not binding authority, they may be cited as evidence of administrative interpretation.  Comerica Bank, N.A. v. United States, 93 F.3d 225, 230 (10th Cir. 1996); see also 26 U.S.C. 6110(j)(3).

(4) any other consistent method productive of an annual allowance which, when added to all allowances for the period commencing with the taxpayer's use of the property and including the taxable year, does not, during the first two-thirds of the useful life of the property, exceed the total of such allowances which would have been used had such allowances been computed under the method described in paragraph (2).

Nothing in this subsection shall be construed to limit or reduce an allowance otherwise allowable under subsection (a).

(c) Limitations on use of certain methods and rates.--Paragraphs (2), (3), and (4) of subsection (b) shall apply only in the case of property (other than intangible property) described in subsection (a) with a useful life of 3 years or more . . . .

Paragraphs (2), (3), and (4) of subsection (b) shall not apply to any motion picture film, video tape, or sound recording.[6]

Subparagraph (b)(4) includes *any* other consistent method, including methods not expressed in a term of years.  The legislative history shows Congress intended § 167 (b)(4) to include methods not expressed in a term of years.  The unit of production method is not expressed in a term of years, and Congress intended (b)(4) to include that method.  See H.R. Rep. No. 1337, 83d Cong., 2d Sess. (1954), reprinted in 1954 U.S.C.C.A.N. 4047; S. Rep. No. 1622, 83d Cong., 2d Sess. (1954), reprinted in 1954 U.S.C.C.A.N. 4655.

The statutory language of § 167(b)(4) does not limit use of the income forecast method or other methods not expressed in a term of years to movies or similar property.  The legislative history of § 167 shows that the methods set out in § 167(b) were intended "to apply to all types of tangible depreciable assets."  S. Rep. No. 1622.  Nor do the prescribed regulations limit methods to any specific types of property.  They require only that the taxpayer establish that an alternative method under (b)(4) is "both a reasonable and consistent method" and that it

---

[6] In 1990, Congress eliminated former sections (b) and (c) as obsolete.  Revenue Reconciliation Act of 1990, Pub. L. No. 101-508, § 11812, 104 Stat. 400.

-16-

complies with the limitations of § 167(b)(4) and (c).  See Treas. Reg. §§ 1.167(b)-4 (1960) and (c)-1 (1972) (amended 1994 and 1995).  Any method that satisfies these requirements is presumptively reasonable under § 167.  See St. Louis County Water Co. v. United States, 452 F.2d 1022, 1027-28 (Ct. Cl. 1971) (modified straight line method based on costs not fully incurred held reasonable because depreciation allowances claimed did not exceed those from declining balance method).

The taxpayers may be entitled to use the income forecast method even if they cannot satisfy the requirements of § 167(b)(4) and (c).  Section § 167(b) provides that a reasonable allowance for depreciation "shall include (but shall not be limited to)" the methods set out in (b), and that "[n]othing in this subsection shall be construed to limit or reduce an allowance otherwise allowable under subsection (a)."  The Commissioner suggests Congress intended this language to permit only those methods that had been recognized before 1954.  However, there is nothing in § 167 to suggest Congress intended to permit methods outside subsection (b) only if they had been recognized prior to enactment of § 167 in 1954.

Nor does the legislative history support this interpretation.  The legislative history shows Congress included this language in 1954 to make it clear that establishment of the presumptively reasonable methods of § 167(b) did not preclude use of other methods that, under existing law, had been *or might be proved* reasonable.  See Congressional reports reprinted in 1954 U.S.C.C.A.N. 4048, 4657, 4836-37, 5288.  Treas. Reg. § 1.167(b)-0(b) provides methods

-17-

previously found reasonable will continue to be acceptable under § 167(a), but does not state no new methods outside § 167(b) will be recognized. The IRS in fact recognized a new method under § 167(a) in 1960 when it first permitted use of the income forecast method to depreciate televisions films.

Under § 167(a), a taxpayer is not restricted to any specific method of depreciation. Any method can be used if the taxpayer can prove it is reasonable. Treas. Reg. § 1.67(b)-0(a) provides "[a]ny reasonable and consistently applied method of computing depreciation may be used or continued in use under section 167" as long as the method does not yield depreciation deductions that exceed the amounts necessary to recover the unrecovered cost or other basis less salvage value during the remaining useful life of the property. See Silver Queen Motel v. C.I.R., 55 T.C. 1101, 1103 n.2 (1971); see also Kraft Foods Co. v. C.I.R., 21 T.C. 513, 592 (1954); Mertens § 23A.67.

We are not persuaded by the revenue rulings limiting the income forecast method to property similar to movies. In Rev. Rul. 60-358, the IRS reasoned the § 167(b) methods caused distortion of income because of the strikingly uneven flow of income earned by television films. Unsuccessful series earn little or no income after their initial broadcast, but successful ones earn additional income in later years from reruns. "Thus, the usefulness of such assets in the taxpayer's trade or business is measurable over the income it produces and cannot be adequately measured by the passage of time alone. Therefore, in order to avoid distortion, depreciation must follow the 'flow of income.'" Rev. Rul. 60-358. The IRS permitted use of the income forecast method to depreciate films as an

-18-

alternative method under § 167(a) because the presumptively reasonable methods of § 167(b) were inadequate, but limited the ruling to films and similar assets.

Underlying this ruling is the premise that alternative methods under § 167(a) will be considered only if the usual methods expressed in terms of years are inadequate because of the nature of the property. Here, the nature of taxpayers' rental units does not preclude depreciation by the usual time-based methods, but there is nothing in the statutory language or in legislative history to suggest alternative methods under § 167(a) are available only when the nature of the property renders the usual methods inadequate. As §§ 167(b) and 168 recognize, there may be more than one reasonable method of depreciating an asset.

Citing Holder Drive-Ur-Self, Inc. v. C.I.R., 43 T.C. 202 (1964), the Commissioner argues taxpayers cannot use § 167(a) to justify depreciation methods that do not qualify as presumptively reasonable under § 167(b). In Holder, the court rejected the taxpayer's argument that under § 167(a) it could depreciate rental cars with a useful life of less than three years by the declining balance method. The court held the taxpayer could not use § 167(a) to justify the method because the method could not qualify as presumptively reasonable under § 167(b) and (c) due to its short useful life. Cf. Priv. Ltr. Rul. 9015014 (permitting taxpayer to elect out of MACRS and use actual hours of use method to depreciate heavy construction equipment subject to limits of § 167(b)(4)). The court in Holder relied on Hertz Corp. v. United States, 364 U.S. 122, 124 (1960), where the Court stated "[s]ection 167 of the Code limits the use of this method

(declining balance) to property 'with a useful life of three years or more.'" However, in Hertz, it appears the taxpayer relied solely on § 167(b)(2) and did not argue the method was permissible under § 167 (a). Here, the taxpayers have made that argument.

In Carland, Inc. v. C.I.R., 909 F.2d 1101 (8th Cir. 1990), the court held the taxpayers could not use the income forecast method to depreciate railroad rolling stock leased to customers because the method yielded faster depreciation than the double declining balance method and it could not qualify as presumptively reasonable under § 167(b)(4). However, it does not appear the taxpayers argued the method was permissible under § 167(a) and the court expressly declined to decide whether the income forecast method could be an appropriate method of depreciating property that, unlike movies, is subject to ordinary wear and tear.

We conclude Hertz and Carland are distinguishable and we reject Holder as contrary to the statutory language and legislative history of § 167. Depreciation methods that fail to qualify as presumptively reasonable under § 167(b) may nonetheless be proved reasonable under § 167(a).

The taxpayers bear the burden of proving an alternative method of depreciation is reasonable. A reasonable method must produce a reasonable allowance. A reasonable allowance is that amount which should be set aside annually "in accordance with a reasonably consistent plan (not necessarily at a uniform rate), so that the aggregate of the amounts set aside, plus salvage value, will, at the end of the estimated useful life of the depreciable property, equal the cost or other basis of the property" Treas. Reg. § 1.167(a)-1(a). A reasonable

depreciation method cannot produce annual deductions that exceed "such amounts as may be necessary to recover the unrecovered cost or other basis less salvage value during the remaining useful life of the property. Treas. Reg. § 1.167(b)-0(a). To be reasonable, a method must meaningfully allocate the cost of using an asset to the periods which are benefited by that asset. Hertz, 364 U.S. at 126; Massey, 364 U.S. at 104. Methods of depreciation should be reasonably accurate approximations of economic reality. See Mertens § 23A.67.

Here, the Commissioner conceded the income forecast method is the most economically accurate method of depreciating taxpayers' property. Thus, the Commissioner has effectively conceded the method is reasonable. The Commissioner argues because one of the goals of the ACRS and the MACRS is to reduce disagreement and litigation between taxpayers and the IRS over useful life and depreciation methods, § 168(f)(1) must be construed narrowly to permit the income forecast method only for the kinds of property for which it was a recognized method before enactment of the ACRS. Otherwise, the § 168(f)(1) exception would permit many taxpayers to escape the MACRS, resulting in disagreement and litigation over useful lives and depreciation methods, contrary to the intent of Congress.

This is not as serious a problem as the Commissioner suggests. Congress has closed the gates against the flood of litigation predicted by the Commissioner. In § 1086(a) of the Taxpayer Relief Act of 1997, Pub. L. 105-34, Congress amended § 167(g) to limit use of the income forecast method to motion picture films, videotapes, sound recordings, copyrights, books, patents, and other

property specified in regulations.  The amendment applies to property placed in service after the effective date.  Pub. L. 105-34 § 1086(c).  The issue resolved in this case will not arise in future years.

Even for earlier tax years, the effect of this opinion is limited.  We do not hold that all property can be depreciated by the income forecast method under the statutes in effect during the 1987 and 1988 tax years at issue.  Like movies and rental videotapes, the taxpayers' rental units directly produce income, which can be measured and estimated for the future.  We do not decide whether the income forecast method can be applied to assets that do not directly produce income as that issue is not before us.  Moreover, taxpayers will only use the income forecast method when it is in their interest to do so and the method is not necessarily more beneficial to taxpayers than the version of MACRS in effect for 1987 and 1988.  The income forecast method does not necessarily result in faster depreciation than the double declining balance method applied to the recovery periods of the MACRS, which are generally shorter than useful lives under former law.  See S. Rep. No. 155, 97th Cong., 1st Sess. 48, reprinted in 1981 U.S.C.C.A.N. 105, 153.  Only taxpayers like these rent-to-own companies, whose property was assigned a recovery period significantly longer than its actual useful life[7] will resort to the income forecast method and the likelihood of a dispute with the IRS.  Our holding that these rent-to-own companies can use the income forecast method for 1987 and 1988 will not inevitably cause the exception of § 168(f)(1) to swallow the

---

[7] Congress resolved that problem for future tax years in the Taxpayer Relief Act of 1997 by amending § 168 to assign rental property of qualified rent-to-own companies a four-year class life and a three-year recovery period.  Pub. L. 105-34 § 1086(b).

general rule of § 168 that tangible property must be depreciated under the MACRS.

The Commissioner has not conceded the income forecast method was properly applied to produce reasonable depreciation allowances and the Tax Court did not reach that issue because it concluded taxpayers were precluded from using that method. Nor did the Tax Court decide whether taxpayers had made a proper election under § 168(f)(1). Accordingly, the case must be remanded for determination of those issues. On remand, the tax court must determine whether taxpayers made a proper election under § 168(f) and, if so, whether they improperly applied the income forecast method because they did not accurately forecast the income expected over the life of the assets and did not make an adjustment for salvage value.

The decision of the Tax Court is REVERSED and the case is REMANDED for further proceedings.