T.C. Memo. 1999-14


UNITED STATES TAX COURT


ABC RENTALS OF SAN ANTONIO, INC., ET AL., Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent*


Docket Nos. 20689-91, 20690-91,    Filed January 25, 1999.
20691-91.[1]


<u>Timothy P. O'Sullivan</u> and <u>John R. Gerdes</u>, for petitioners.

<u>Michael J. O'Brien</u>, for respondent.

---

    *This Supplemental Memorandum Findings of Fact and Opinion
supplements our prior Memorandum Opinion in the instant case, <u>ABC
Rentals of San Antonio, Inc. v. Commissioner</u>, T.C. Memo. 1994-
601, revd. and remanded 142 F.3d 1200 (10th Cir. 1998).

    [1]Cases of the following petitioners are consolidated
herewith:  David R. Peters and Diana L. Peters, docket No. 20690-
91; and John P. Parsons and Melba R. Parsons, docket No. 20691-
91.

SUPPLEMENTAL MEMORANDUM FINDINGS OF FACT AND OPINION

HAMBLEN, Judge:  This case is before us on remand from the Court of Appeals for the Tenth Circuit.  ABC Rentals of San Antonio, Inc. v. Commissioner, 142 F.3d 1200 (10th Cir. 1998), revg. and remanding T.C. Memo. 1994-601.

The issues for decision concern the proper election and proper application of the income forecast method of depreciation. We previously determined in ABC Rentals of San Antonio, Inc. v. Commissioner, T.C. Memo. 1994-601 (ABC Rentals I), that petitioners failed to demonstrate that the consumer durables, leased in their rent-to-own business, constitute property which is properly depreciable under the income forecast method of depreciation.  The Court of Appeals concluded that section 168(f)(1)[2] does not preclude use of the income forecast method for property like petitioners' rent-to-own inventory.  Since we determined that petitioners' rental units could not be depreciated using the income forecast method and did not reach respondent's other arguments, the Court of Appeals has directed us to determine on remand

whether taxpayers made a proper election under
section 168(f) and, if so, whether they improperly
applied the income forecast method because they did not
accurately forecast the income expected over the life

---

[2]All section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

of the assets and did not make an adjustment for salvage value.

ABC Rentals of San Antonio, Inc. v. Commissioner, 142 F.3d at 1211.

FINDINGS OF FACT

This case was submitted without a trial pursuant to Rule 122. The findings of fact are set forth in ABC Rentals I and are incorporated herein by this reference. The stipulation and exhibits are also incorporated herein by this reference. For convenience, we shall repeat those facts as necessary to clarify the ensuing discussion. We also set forth below certain supplementary findings of fact that were not set forth in our prior opinion but which are based on the record of the instant case and are relevant to issues decided on remand.

The individual petitioners petitioned this Court contesting respondent's determinations of deficiencies in their Federal income tax as follows:

ABC Rentals of San Antonio, Inc.--Docket No. 20689-91

| Tax Period Ended | Deficiency |
| --- | --- |
| 5/31/87 | $7,404.90 |

David R. Peters and Diana L. Peters--Docket No. 20690-91

| Tax Period Ended | Deficiency |
| --- | --- |
| 12/31/87 | $572 |
| 12/31/88 | 833 |

John P. Parsons and Melba R. Parsons--Docket No. 20691-91

| Tax Period Ended | Deficiency | Additions to Tax Sec. 6661 |
|---|---|---|
| 12/31/87 | $11,028 | $2,757 |
| 12/31/88 | 8,095 | 2,024 |

Respondent subsequently conceded the additions to tax pursuant to section 6661 in docket No. 20691-91 for the 1987 and 1988 taxable years in the amounts of $2,757 and $2,024, respectively.

During the tax periods in issue, Guaranteed Rental Systems, Inc. (Guaranteed), was an S corporation not subject to the unified audit and litigation procedures of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 402(a), 96 Stat. 324, 648,[3] and all of Guaranteed's adjustments flowed directly through to the shareholders' tax returns and are reflected in the deficiencies shown in docket Nos. 20690-91 and 20691-91.  For the fiscal year ending May 31, 1987, ABC Rentals of San Antonio, Inc. (ABC), was a C corporation, and the notice of deficiency in docket No. 20689-91 relates to deficiencies during that fiscal year only.  Thereafter, ABC applied for and

----

[3]Sec. 6244 provides that the TEFRA provisions relating to the assessment and determination of partnership items are extended to the assessment and determination of subch. S items. Sec. 301.6241-1T(c), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 3003 (Jan. 30, 1987), exempts small S corporations, defined as corporations with 5 or fewer shareholders, from the unified audit and litigation procedures for taxable years the due date of the return of which is on or after Jan. 30, 1987.

was granted S corporation status. For the tax period ending December 31, 1987, and the tax year ending December 31, 1988, ABC was a non-TEFRA subchapter S corporation, and all of ABC's adjustments flowed through to its sole shareholder, John P. Parsons, and are reflected in the deficiencies shown in docket No. 20691-91.

On January 27, 1992, these cases were consolidated. These consolidated cases were submitted without a trial pursuant to Rule 122.

At the time the petitions were filed in these cases, Guaranteed and ABC (hereinafter sometimes collectively referred to as the Entities or individually referred to as an Entity) were corporations incorporated in the State of Texas with their principal offices located in Wichita, Kansas. During the taxable periods in controversy, Guaranteed and ABC were accrual basis taxpayers.

For the fiscal year ending May 31, 1987, ABC timely filed its Federal corporate income tax return. ABC timely filed a valid subchapter S election, and the election was granted effective June 1, 1987. Guaranteed timely filed its Federal corporate income tax return for an S corporation for the calendar year ending 1987, and ABC timely filed its Federal corporate income tax return for an S corporation for the short taxable

period ending December 31, 1987. Guaranteed and ABC timely filed their Federal corporate income tax returns for S corporations for the calendar year 1988.

Guaranteed and ABC operated commercial enterprises which rented consumer durables (appliances, furniture, televisions, stereos, and video cassette recorders) under rent-to-own leases to individuals. Both Entities have been in the rent-to-own business for a number of years. During the tax periods in controversy, Guaranteed and ABC estimated that the total gross rental anticipated to be received on each rental unit (except for initial rental contracts on rental unit purchases as transfers between companies as discussed below) would be 300 percent of its initial cost. This method of determining the total gross rental anticipated to be received was consistent with the practice in the rent-to-own industry. In determining the weekly or monthly rental rate, as the case may be, for each rental unit, the Entities divided such expected total gross rental by the total number of weeks or months, as the case may be, under the initial rental contract for such rental units.

Whenever a rental unit either was picked up by an Entity or returned to that Entity prior to all payments being made under the initial rental contract, due either to a failure of the customer to timely pay periodic rent or the exercise by the

customer of the customer's rights to return the rental unit at any time, normally a subsequent rental contract, having the same provisions and weekly or monthly rental payment as the initial rental contract, would be executed with another customer.[4] During the tax years in issue, each Entity periodically sold or purchased rental units to or from the other Entity at the selling Entity's book value.[5]

Rental units ceased to be in an Entity's depreciable rental inventory upon the occurrence of the following events: (1) Customers' retaining rental units for the full term of the rental contract; (2) customers' electing the early purchase option thereunder; (3) selling or junking substantially damaged rental units which were returned to an Entity by customers; (4) theft of

---

[4]The term of the subsequent rental contract would be adjusted, when so required, according to the Entity's internal schedule. This internal schedule might require a reduction in the term of the lease depending upon the number of days the rental unit had been previously rented. In a small minority of circumstances, the weekly or monthly rental payments also would be reduced under the subsequent rental contract on returned rental units which had sustained a diminished value beyond normal wear and tear. Normally this procedure would continue to be followed until a customer retained the rental unit for the full term of the rental contract.

[5]The Entities used the straight line method of depreciation for book purposes with an 18-month useful life to depreciate all of the rental units. Such transfers between Entities were not made for tax reasons, but for the purpose of transferring rental units to maximize their income potential. The term of the rental contract of the rental units so purchased, which had been previously rented by the selling Entity, was adjusted accordingly.

the rental units; and (5) transfers between one Entity and the other Entity. The vast majority of rental units ceased to be in an Entity's inventory due to customers' retaining the rental units for the full term of the rental contract (be it the initial rental contract or the subsequent rental contract). If a customer retained the rental unit for the full term of the rental contract, title to the rental unit vested in the customer at no additional cost, provided the customer had paid all periodic rental payments. When any of the units ceased to be in an Entity's depreciable rental inventory, the remaining basis was either "charged off" or used to determine gain or loss from the disposition.

On their income tax returns ending in 1987 and 1988, the Entities continued to depreciate all rental units placed in service during prior tax years, using the accelerated cost recovery system (ACRS). The recovery period used by the Entities to calculate the depreciation under ACRS was 5 years.

For Federal income tax purposes, the Entities calculated depreciation on their rental units placed in service for tax years ending after 1986 using the income forecast method.[6] On

---

[6]Under the income forecast method used by the Entities, a rental unit's depreciation deduction was based on the rent received on that rental unit. Consequently, a depreciation deduction was not taken on a rental unit during any month in which it did not earn rental income.

rental units initially acquired by an Entity through purchase from third parties and rented for the first time and for rental units rented by an entity on a subsequent rental contract, each year's depreciation deduction was equal to the cost of the rental units multiplied by a fraction. The numerator of the fraction was the current year's income from that rental unit. The denominator of the fraction was 300 percent of the rental unit's initial cost, which was the amount of total gross rental that would be received if the initial rental contract on such rental went to term.

Guaranteed attached Statement 2 to its tax return for the taxable year ending December 31, 1987. The only information Statement 2 provided was that the type of property being depreciated was "RENTAL UNITS". The statement did not say that Guaranteed made an election of the income forecast method or of any other method of depreciation. Rather, the Statement 2 "Method" column was left blank. Nor did it refer to section 168(f)(1) or to any other provision of the Code. Statement 2 did not provide the year the rental property was placed in service-- in the "Date Acquired" column, Statement 2 says "VAR". In addition, Statement 2 did not provide the unadjusted basis of the rental property--the "Cost or Basis" column is blank.

The Form 4562 filed with Guaranteed's tax return for its taxable year ending December 31, 1987, contains the heading on line 9 "Property subject to section 168(f)(1) election." The 1987 instructions for this form provide that line 9 should be used to report property that the taxpayer elects, under section 168(f)(1), to depreciate by any method not based on a term of years. Furthermore, the instructions provide that the depreciation deduction for the property should be entered in column (f) of line 9.[7] However, Guaranteed left column (f) of line 9 blank. Rather, it appears the depreciation deduction for the rental property has been included in column (f) of line 10-- "Other depreciation" where a $40,616 deduction is claimed. Guaranteed failed to indicate on its Form 4562 that it was using the income forecast method of depreciation. Nothing in Guaranteed's return indicates that it was electing the income forecast method of depreciation.

ABC did not attach a separate statement to its return for its taxable year ending May 31, 1987. ABC did not include the year the rental property was placed in service, nor did it include the unadjusted basis of the rental property.

---

[7]See infra pp. 18-19.

The Form 4562 filed with ABC's tax return for the year ending May 31, 1987, contains the heading on line 7 "Property subject to section 168(e)(2) election."[8]  The 1986 instructions for this form provide that line 7 should be used to report property that the taxpayer elects, under section 168(e)(2), to depreciate by any method not based on a term of years.  Furthermore, the instructions provide that the depreciation deduction for the property should be entered in column (f) of line 7.[9]  However, ABC left column (f) of line 7 blank.  Rather, it appears the depreciation deduction for the rental property has been included in column (f) of line 8--"Other depreciation" where a $119,195 deduction is claimed.  ABC failed to indicate on its Form 4562 or anywhere else on its return that it was using the income forecast method of depreciation.  The only methods of depreciation indicated on its return are "ACRS" and "DDB".

---

[8]Sec. 168(e)(2) is the predecessor to sec. 168(f)(1) and applies to property placed in service prior to Jan. 1, 1987. ABC's tax return for the year ended May 31, 1987, contains depreciation deductions for property placed in service from June 1 through Dec. 31, 1986, which would be governed by the former sec. 168(e)(2) as well as property placed in service from Jan. 1 through May 31, 1987, which would be governed by sec. 168(f)(1).

[9]See infra pp. 21-22.

Nothing in ABC's return indicates it was electing the income forecast method of depreciation.

ABC attached Statement 4 to its tax return for its short taxable period ending December 31, 1987.  Statement 4 provided that the type of property being depreciated was "RENTAL INVENTORY" and that a method of depreciation--"INCOME FORECASTING"--was used other than ACRS or MACRS.  The statement did not refer to section 168(f)(1) or any other Code section. Statement 4 provided the year the rental property was placed in service--"6/30/87", as well as the unadjusted or cost basis of the rental property--"624,899".

For rental units placed in service by Guaranteed and ABC in 1988, respondent does not contest the form or timing of the election.  The parties have stipulated that the Entities have filed elections pursuant to section 168(f)(1) to select the income forecast method of depreciation for the tax years ending December 31, 1988.  Statement 10 attached to Guaranteed's 1988 income tax return contained the following:

```
SECTION 168(F)(1)   ELECTION TO EXCLUDE PROPERTY FROM ACRS
BY USE OF A METHOD OF DEPRECIATION NOT EXPRESSED IN A TERM
OF YEARS: RENTAL INVENTORY
        1.    NAME OF TAXPAYER:   GUARANTEED RENTAL SYSTEM, INC.
        2.    TAXPAYER I.D. # :   74-2390641
        3.    YEAR RECOVERY PROPERTY PLACED IN SERVICE:  VARIOUS
        4.    UNADJUSTED BASIS OF RECOVERY PROPERTY:  $210,138
        5.    METHOD OF DEPRECIATION:  INCOME FORECASTING
```

Statement 14 attached to ABC's 1988 income tax return contained the following:

> SECTION 168(F)(1)   ELECTION TO EXCLUDE PROPERTY FROM ACRS BY USE OF A METHOD OF DEPRECIATION NOT EXPRESSED IN A TERM OF YEARS:   RENTAL INVENTORY
>
> 1.   NAME OF TAXPAYER:   ABC RENTALS OF SAN ANTONIO
> 2.   TAXPAYER I.D. # :   74-2334664
> 3.   YEAR RECOVERY PROPERTY PLACED IN SERVICE:   VARIOUS
> 4.   UNADJUSTED BASIS OF THE RECOVERY PROPERTY: $544,343
> 5.   METHOD OF DEPRECIATION:   INCOME FORECASTING

Guaranteed and ABC compiled detailed experience data with respect to their rental units during the 1991 and 1992 calendar years.  Guaranteed and ABC's business operations and surrounding market conditions have remained essentially unchanged from the years at issue throughout the years in which such experience data was derived.  Due to such continuity, the parties submit that (assuming the actual data as to Guaranteed and ABC was available for the tax years in question) the data, if delineated, would not vary materially from the experience data delineated from 1991 and 1992.

Each Entity's 1991 and 1992 experience data indicates that, per category of rental units, the actual average total amount of gross rental the Entities received under all rental contracts for a rental unit in such category was the product of the initial cost to an Entity of such rental unit times the following delineated integer:

| Category | Integer | |
| --- | --- | --- |
| | Guaranteed | ABC |
| Appliances | 3.1 | 3.2 |
| Televisions | 2.8 | 3.0 |
| Furniture | 2.9 | 2.6 |
| Stereos | 2.7 | 3.0 |
| Video cassette recorders | 2.9 | 3.4 |

An integer of 3.0 represents a gross return of 300 percent of initial cost.

Each Entity's 1991 and 1992 experience data indicates that, per category of rental units consisting of all rental units having the same initial term, the actual average total amount of gross rental the Entities received under all rental contracts for a rental unit in such category was the product of the initial cost to the Entity of such rental unit times the following delineated integer:

| Initial Term | Integer | |
| --- | --- | --- |
| Months | Guaranteed | ABC |
| 12 | 3.1 | 3.0 |
| 15 | 2.7 | 3.4 |
| 18 | 3.0 | 3.2 |
| 19 | 2.6 | 2.5 |
| 20 | 3.2 | 2.8 |
| 21 | 3.0 | 3.1 |

An integer of 3.0 represents a gross return of 300 percent of initial cost.

Each Entity's 1991 and 1992 experience data indicates that its percentage of sales proceeds derived from sales of rental

units to third parties by category, such percentage being equal
to the ratio such total sales proceeds bore to the total initial
purchase price of all rental units in that category, was as
follows:

| Category | Percentage | |
|---|---|---|
| | Guaranteed | ABC |
| Appliances | 2.0 | 2.7 |
| Televisions | Less than 1 | 5.5 |
| Furniture | 2.3 | 2.4 |
| Stereos | Less than 1 | Less than 1 |
| Video Cassette Recorders | Less than 1 | Less than 1 |

The total initial cost of rental units acquired during the
years 1987 and 1988 and which remained in Guaranteed's rental
inventory as of the end of the years was $142,173.71 and
$117,812.45, respectively.  The total initial cost of rental
units acquired during the tax periods ending May 31, 1987,
December 31, 1987, and December 31, 1988, and which remained in
ABC's rental inventory as of the end of the periods was
$273,435.20, $137,102.89, and $328,557.04, respectively.

OPINION

The U.S. Court of Appeals for the Tenth Circuit has directed
us to determine:  (1) Whether petitioners made a proper election
under section 168(f) and, (2) if a proper election was made under
section 168(f), whether petitioners improperly applied the income
forecast method because they did not accurately forecast the

income expected over the life of the assets and did not make an adjustment for salvage value. ABC Rentals of San Antonio, Inc. v. Commissioner, 142 F.3d at 1211.

We hold that Guaranteed failed to make a proper election for its taxable year ending December 31, 1987, and that ABC failed to make a proper election for its taxable year ending May 31, 1987. We hold further that ABC made a proper election for its short taxable period ending December 31, 1987, since it substantially complied with the election requirements for this short taxable period. For rental units placed in service during taxable years ending in 1988, the parties have stipulated that both Guaranteed and ABC properly elected out of MACRS under section 168(f)(1).

Furthermore, in this particular case, since the parties stipulated as to the estimate of income expected over the life of the rental property and this estimate approximated petitioners' experience, and since they stipulated that 1991-92 data did not vary materially from the years in question, we hold that in this situation petitioners did accurately forecast the income expected over the life of the rental property. In addition, since the salvage value is inconsequential and since the parties stipulated that 1991 and 1992 data did not vary materially from 1987 and 1988 data, we hold that petitioners did not have to make an adjustment to the rental units' costs for salvage value.

I.    Proper Election

The Court of Appeals has directed us to determine whether petitioners made a proper election under section 168(f) for the 1987 and 1988 years before us.  ABC Rentals of San Antonio, Inc. v. Commissioner, 142 F.3d at 1211.

Under section 168(f)(1) taxpayers must make a proper election in the first taxable year for which a depreciation deduction would be allowable for the rental unit.  Section 168(f)(1) provides:

> (f)  Property to Which Section Does Not Apply.--This section shall not apply to--
> (1)  Certain methods of depreciation.--Any property if--
> (A)  the taxpayer elects to exclude such property from the application of this section, and
> (B)  for the 1st taxable year for which a depreciation deduction would be allowable with respect to such property in the hands of the taxpayer, the property is properly depreciated under the unit-of-production method or any method of depreciation not expressed in a term of years (other than the retirement-replacement-betterment method or similar method).

Section 2.02 of Revenue Procedure 87-57, 1987-2 C.B. 687, 688, provides that the election under section 168(f)(1) must be made following the procedures set forth in section 2.10 of the Revenue Procedure.  Section 2.10 of Revenue Procedure, 1987-2 C.B. at 689, provides,

> .10 Time and manner for making elections.  Under section 5h.5(a)(2) of the temporary regulations, after April 14, 1987, an election described in this revenue procedure

shall be made by the due date (taking extensions into account) of the tax return for the first taxable year for which the election is to be made.  The tax return must be accompanied by a statement identifying the election by reference to Code or Act section and identifying the property items for which the election is being made.

Section 5h.5, Temporary Tax Reform Act of 1986 Election

Regs., 52 Fed. Reg. 3624 (Feb. 5, 1987), effective February 5,

1987, applies to section 168(f)(1) elections and sets forth the

time and manner guidelines for elections made after October 22,

1986.  The election for section 168(f)(1) is available for

property placed in service after December 31, 1986.  Section

5h.5(a)(2) of the Temporary Tax Reform Act of 1986 Election

Regs., 52 Fed. Reg. 3626 (Feb. 5, 1987), provides,

> (a)(2)  Time for making elections--(i) In general. Except as otherwise provided in this section, the elections specified in paragraph (a)(1) of this section shall be made by the later of--
> (A)  The due date (taking extensions into account) of the tax return for the first taxable year for which the election is to be effective, or
> (B)  April 15, 1987 (in which case the election generally must be made by amended return).

Section 5h.5(a)(3) provides,

> (a)(3)  Manner of making elections--(i) In general. Except as otherwise provided in this section, the elections specified in paragraph (a)(1) of this section shall be made by attaching a statement to the tax return for the taxable year for which the election is to be effective.  If because of paragraph (a)(2)(i)(B) of this section the election may be filed after the due date of the tax return for the first taxable year for which the election is to be effective, such statement must be attached to a tax return or amended return for the taxable year to which the election relates.  Except as otherwise provided in the return or in the instructions

accompanying the return for the taxable year, the statement shall--

     (A)  Contain the name, address and taxpayer identification number of the electing taxpayer,

     (B)  Identify the election,

     (C)  Indicate the section of the Code (or, if the provision is not codified, the section of the Act) under which the election is made,

     (D)  Specify, as applicable, the period for which the election is being made and/or the property or other items to which the election is to apply, and

     (E)  Provide any information required by the relevant statutory provisions and any information necessary to show that the taxpayer is entitled to make the election.

A.   <u>Guaranteed</u>

Guaranteed did not meet the requirements for the tax year ending December 31, 1987.  Guaranteed did attach a statement-- Statement 2--to its tax return for the taxable year ending December 31, 1987.  However, the statement did not comply with the requirements of Revenue Procedure 87-57, <u>supra</u>, or section 5h.5, Temporary Tax Reform Act of 1986 Election Regs., <u>supra</u>. The only item of information Statement 2 provided was that the type of property being depreciated was "RENTAL UNITS".  The statement did not say that Guaranteed made an election of the income forecast method or of any other method of depreciation. Nor did it refer to section 168(f)(1) or to any other provision of the Code.

Petitioners rely on section 1.168-5(e)(3), Proposed Income Tax Regs., 49 Fed. Reg. 5968 (Feb. 16, 1984).  However, we note

that Guaranteed did not even meet the less stringent requirements

of section 1.168-5(e)(3), Proposed Income Tax Regs., supra,

assuming arguendo they were otherwise applicable.  Section 1.168-

5(e)(3) provides:

> (3)  Manner of making elections.  Except as provided in subparagraph (5), Form 4562 is provided for making an election under this paragraph and for submitting the information required.  The taxpayer must specify in the election--
> > (i)  The name of the taxpayer;
> > (ii) The taxpayer's identification number;
> > (iii)The year the recovery property was placed in service (or, in the case of 15-year real property, the month the property was placed in service);
> > (iv) The unadjusted basis of the recovery property; and
> > (v)  Such other information as may be required.
>
> An election will not be rendered invalid so long as there is substantial compliance, in good faith, with the requirements of subparagraph (3).

Statement 2 did not provide the year the rental property was

placed in service--in the "Date Acquired" column, Statement 2

says "VAR".  In addition, Statement 2 did not provide the

unadjusted basis of the rental property--the "Cost or Basis"

column is blank.

Furthermore, section 1.168-5(e)(3), Proposed Income Tax

Regs., supra, states that Form 4562, Depreciation and

Amortization, is provided for making the election.  The 1987

instructions for this form provide the following guidance for

line 9 of section C, Other Depreciation:

Line 9.--Report property that you elect, under section 168(f)(1), to depreciate by the units-of-production method or any other method not based on a term of years (other than the retirement-replacement-betterment method).

On a separate sheet, attach:  (1) a description of the property and what depreciation method you elect that excludes the property from ACRS; and (2) the depreciable basis (cost or other basis, reduced, if applicable, by salvage value, investment credit, and the section 179 expense).

Enter the depreciation deduction in column (f).

The Form 4562 filed with Guaranteed's tax return for its taxable year ending December 31, 1987, contains the heading on line 9 "Property subject to section 168(f)(1) election." However, Guaranteed left column (f) of line 9 blank.  Rather, it appears the depreciation deduction for the rental property has been included in column (f) of line 10--"Other depreciation" where a $40,616 deduction is claimed.  Thus, Guaranteed failed to indicate on its tax return, or on the accompanying Statement 2 and Form 4562, that the rental property (or any other of its property) was subject to the section 168(f)(1) election. Moreover, Guaranteed failed to indicate on its tax return, Form 4562, or Statement 2 that it was using the income forecast method of depreciation.  Rather, the Statement 2 "Method" column was left blank.

For the tax year ending December 31, 1987, Guaranteed was not even in substantial compliance with the election requirements.  Nothing in Guaranteed's return, or on the

accompanying form or statement, indicates that it was electing the income forecast method of depreciation. <u>Knight-Ridder Newspapers, Inc. v. United States</u>, 743 F.2d 781, 793-99 (11th Cir. 1984). Thus, Guaranteed did not substantially comply with the requirements of Revenue Procedure 87-57, <u>supra</u>, or section 5h.5, Temporary Tax Reform Act of 1986 Election Regs., <u>supra</u>, nor did it substantially comply with section 1.168-5(e)(3), Proposed Income Tax Regs., <u>supra</u>, or even with the instructions that came with Form 4562. Consequently, we hold that Guaranteed failed to make a proper election of the income forecast method for its taxable year ending December 31, 1987.

    B.   <u>ABC</u>

        1.   <u>Tax Year Ending May 31, 1987</u>

ABC did not meet the requirements for the tax year ending May 31, 1987. ABC did not attach a separate statement to its return for its taxable year ending May 31, 1987. Petitioners' argument that the Service did not even publish Revenue Procedure 87-57, <u>supra</u>, until October 19, 1987, which was subsequent to the filing date of ABC's tax return for the tax year ending May 31, 1987, is without merit. Section 5h.5, Temporary Tax Reform Act of 1986 Election Regs., <u>supra</u>, was effective February 5, 1987, and set forth the time and manner guidelines for elections made after October 22, 1986. Moreover, section 5h.5, Temporary Tax

Reform Act of 1986 Election Regs., supra, was published in the Federal Register for February 5, 1987, which was prior to August 21, 1987, the date ABC's tax return for its taxable year ending May 31, 1987, was signed.  Consequently, ABC should have complied with the requirements set forth in section 5h.5, Temporary Tax Reform Act of 1986 Election Regs., supra.  ABC did not attach to its return a separate statement or otherwise comply with the requirements.

Nor did ABC comply with the requirements of section 1.168-5(e)(3), Proposed Income Tax Regs., supra, assuming they were applicable.  ABC did not include on its return, or on any other form or statement accompanying the return, the year the rental property was placed in service, nor did it include the unadjusted basis of the rental property.

As indicated above, section 1.168-5(e)(3), Proposed Income Tax Regs., supra, states that Form 4562, Depreciation and Amortization, is provided for making the election.  The 1986 instructions for this form provide the following guidance for line 7 of section C, Depreciation of Nonrecovery Property:

> Line 7.--Report property that you elect, under
> section 168(e)(2), to depreciate by the units-of-
> production method or any other method not based
> on a term of years.  If you use the retirement-
> replacement-betterment method, see section 168(f)(3).
>     On a separate sheet, attach:  (1) a description
> of the property and what depreciation method you
> elect that excludes the property from ACRS; and

(2) the depreciable basis (cost or other basis, reduced, if applicable, by salvage value, half the investment credit, and the section 179 expense).
     Enter the depreciation deduction for the property in column (f).

The Form 4562 filed with ABC's tax return for the year ending May 31, 1987, contains the heading on line 7 "Property subject to section 168(e)(2) election."[10]  However, ABC left column (f) of line 7 blank.  Rather, it appears the depreciation deduction for the rental property has been included in column (f) of line 8--"Other depreciation" where a $119,195 deduction is claimed.  Thus, ABC failed to indicate that any of its property was subject to the section 168(f)(1) election.  Moreover, ABC failed to indicate on its Form 4562 or on its return that it was using the income forecast method of depreciation.  The only methods of depreciation indicated on its return are "ACRS" and "DDB".

ABC was not even in substantial compliance with the election requirements.  Nothing in ABC's return or on the attached Form 4562 indicates it was electing the income forecast method of depreciation.  Knight-Ridder Newspapers, Inc. v. United States, supra at 793-99.  Thus, ABC did not comply with the requirements of Revenue Procedure 87-57, supra, or section 5h.5, Temporary Tax Reform Act of 1986 Election Regs., supra, nor did it comply with

---

[10]See supra note 7.

section 1.168-5(e)(3), Proposed Income Tax Regs., supra, or even with the Instructions that came with Form 4562. Consequently, we hold that ABC did not make a valid election of the income forecast method for its taxable year ending May 31, 1987.

2. Taxable Period Ending December 31, 1987

ABC did not comply literally with every one of the election requirements for its short taxable period ending December 31, 1987. However, it did substantially comply with the election requirements. ABC attached Statement 4 to its tax return for its short taxable period ending December 31, 1987. Statement 4 substantially complied with the requirements of Revenue Procedure 87-57, supra, and section 5h.5, Temporary Tax Reform Act of 1986 Election Regs., supra. Although it failed to identify the applicable Code section, Statement 4 recited that the type of property being depreciated was "RENTAL INVENTORY" and that a method of depreciation--"INCOME FORECASTING"--was used other than ACRS or MACRS.

In addition, Statement 4 identified the year the rental property was placed in service--"6/30/87", as well as the unadjusted or cost basis of the rental property--"624,899."

Thus, ABC's return and attached statement indicated that an election of the income forecast method was being made. See Knight-Ridder Newspapers, Inc. v. United States, supra at 796.

Consequently, we hold that ABC substantially complied with the election requirements for its short taxable period ending December 31, 1987.

We hold as above set forth that Guaranteed failed to make a proper election for its taxable year ending December 31, 1987, and that ABC failed to make a proper election for its taxable year ending May 31, 1987. We hold further that ABC made a proper election for its short taxable period ending December 31, 1987, since it substantially complied with the election requirements for this short taxable period. Consequently, we must determine whether the income forecast method was properly applied to rental units placed in service in 1988 and to ABC's rental units placed in service during its short taxable period ending December 31, 1987.

## II. Proper Application

The U.S. Court of Appeals for the Tenth Circuit has directed us to determine whether petitioners improperly applied the income forecast method because (1) they did not accurately forecast the income expected over the life of the assets and (2) they did not make an adjustment for salvage value. ABC Rentals of San Antonio, Inc. v. Commissioner, 142 F.3d at 1211.

The income forecast method of depreciation requires the application of a fraction, the numerator of which is the income

from the rent-to-own equipment for the taxable year, and the denominator of which is the forecasted or estimated total income to be derived from the rent-to-own equipment during its useful life. Rev. Rul. 60-358, 1960-2 C.B. 68. This fraction is multiplied by the cost of the rent-to-own equipment which produced income during the taxable year, after appropriate adjustment for estimated salvage value. Id.

A.   Income Forecast

Respondent contends that in applying the income forecast method of depreciation, petitioners failed to forecast accurately the income to be received from the assets being depreciated. In fact, respondent contends that the income to be received from equipment placed in service was never forecast. Rather, 300 percent of the asset's cost was always used as the denominator of the fraction. While the latter may be true, the parties stipulated that petitioners estimated that the total gross rental anticipated to be received on each rental unit would be 300 percent of its initial cost, which was consistent with the practice in the rent-to-own industry.

Each Entity's 1991 and 1992 experience data indicates that, per category of rental units, the actual average total amount of gross rental the Entities received under all rental contracts for a rental unit in such category was the product of the initial

cost to the Entity of such rental unit times the following delineated integer:

| Category | Integer | |
|---|---|---|
| | Guaranteed | ABC |
| Appliances | 3.1 | 3.2 |
| Televisions | 2.8 | 3.0 |
| Furniture | 2.9 | 2.6 |
| Stereos | 2.7 | 3.0 |
| Video cassette recorders | 2.9 | 3.4 |

An integer of 3.0 represents a gross return of 300 percent of initial cost.

In addition, each Entity's 1991 and 1992 experience data indicates that, per category of rental units consisting of all rental units having the same initial term, the actual average total amount of gross rental the Entities received under all rental contracts for a rental unit in such category was the product of the initial cost to the Entity of such rental unit times the following delineated integer:

| Initial Term | Integer | |
|---|---|---|
| Months | Guaranteed | ABC |
| 12 | 3.1 | 3.0 |
| 15 | 2.7 | 3.4 |
| 18 | 3.0 | 3.2 |
| 19 | 2.6 | 2.5 |
| 20 | 3.2 | 2.8 |
| 21 | 3.0 | 3.1 |

An integer of 3.0 represents a gross return of 300 percent of initial cost.  Thus, petitioners' experience indicates that the total amount of gross rental received on rental units approximated 300 percent of their initial cost, the percentage the parties stipulated that the total gross rental anticipated to be received on each rental unit would equal.

Petitioners provided data only for the 1991 and 1992 calendar years.  Since such data for the years at issue was not readily available without resorting to significant expense, experience data derived from the 1991 and 1992 calendar years was utilized.  The parties stipulated that petitioners' business operations and surrounding market conditions remained essentially unchanged from the years at issue through the years in which such experience data was derived.  Moreover, the parties stipulated that, due to such continuity, the parties believe that if petitioners' actual data were available for the calendar years 1987 and 1988, the data, if delineated, would not vary materially from the experience data delineated for 1991 and 1992.  Consequently, in this particular case, since the parties stipulated as to the estimate of income expected over the life of the rental property and this stipulation approximated petitioners' experience, and since they stipulated that 1991-92 data did not vary materially from the years in question, we hold

that in this situation petitioners did accurately forecast the income expected over the life of the rental property.

B.  Salvage Value

Second, the Court of Appeals has directed us to determine whether petitioners improperly applied the income forecast method because they did not make an adjustment for salvage value.  ABC Rentals of San Antonio, Inc. v. Commissioner, 142 F.3d at 1211. Under the income forecast method, the fraction--reflecting the ratio of current income to lifetime income--is multiplied by the cost of the rent-to-own equipment which produced income during the taxable year, after appropriate adjustment for estimated salvage value.  Rev. Rul. 60-358, supra.

Section 1.167(a)-1(c)(1), Income Tax Regs., provides:

Salvage value is the amount (determined at the time of acquisition) which is estimated will be realizable upon sale or other disposition of an asset when it is no longer useful in the taxpayer's trade or business or in the production of his income and is to be retired from service by the taxpayer.  * * *

In Carland, Inc. v. Commissioner, 90 T.C. 505, 547 (1988), affd. in part, revd. in part and remanded 909 F.2d 1101 (8th Cir. 1990), we stated:  "An important factor in the determination of salvage value is the taxpayer's experience and the particular circumstances of that experience.  Industry experience is also a factor which may be given consideration."  In this case,

petitioners' experience indicates that the vast majority of rental units ceased to be in their inventory due to customers' retaining the rental units for the full term of the rental contract (be it the initial rental contract or the subsequent rental contract).  If a customer retained the rental unit for the full term of the rental contract, title to the rental unit vested in the customer at no additional cost, provided the customer had paid all periodic rental payments.

In the Carland case, we determined the salvage value of the taxpayer's property based on a percentage of salvage proceeds to original acquisition costs.  Id. at 547.

In this case, each Entity's 1991 and 1992 experience data indicates that its percentage of sales proceeds derived from sales of rental units to third parties by category, such percentage being equal to the ratio such total sales proceeds bore to the total initial purchase price of all rental units in that category, was as follows:

| Category | Percentage | |
|---|---|---|
| | Guaranteed | ABC |
| Appliances | 2.0 | 2.7 |
| Televisions | Less than 1 | 5.5 |
| Furniture | 2.3 | 2.4 |
| Stereos | Less than 1 | Less than 1 |
| Video Cassette Recorders | Less than 1 | Less than 1 |

Thus, petitioners' experience indicates that the salvage value for their rental units was negligible--proceeds from the sales of rental units to third parties were for most rental units less than 3 percent of their original acquisition cost.  In such circumstances, we conclude that petitioners were permitted to ignore such salvage value in determining the depreciation deduction for their property.  Sec. 167(f) (before repeal in 1990 by the Omnibus Budget Reconciliation Act of 1990, Pub. L. 101-508, sec. 11812(a)(1) and (2), 104 Stat. 1388, 1388-534); sec. 1.167(f)-1, Income Tax Regs.  In Bailey v. Commissioner, 90 T.C. 558, 620 (1988), affd. in part, vacated in part and remanded 912 F.2d 44 (2d Cir. 1990), we stated, in discussing the application of the income forecast method to the taxpayer's contractual rights to films:  "During the years in issue, the values of these contract rights at the end of their anticipated useful lives were so negligible that salvage values need not be taken into account."  Therefore, since petitioners' salvage values were negligible, it was proper, under these circumstances, for petitioners to depreciate the total cost of their rental units.

Since the salvage value is inconsequential and since the parties stipulated that 1991 and 1992 data did not vary materially from 1987 and 1988 data, we hold that petitioners,

under these circumstances, did not have to make an adjustment to the rental units' costs for salvage value.

III. Conclusion

We hold that Guaranteed failed to make a proper election of the income forecast method for its taxable year ending December 31, 1987, and that ABC failed to make a proper election for its taxable year ending May 31, 1987. We hold further that ABC made a proper election for its short taxable period ending December 31, 1987, since it substantially complied with the election requirements for this short taxable period. For rental units placed in service during taxable years ending in 1988, the parties have stipulated that both Guaranteed and ABC properly elected out of MACRS under section 168(f)(1).

Furthermore, in this particular case, since the parties stipulated as to the estimate of income expected over the life of the rental property, and this estimate was borne out by petitioners' experience, and since they stipulated that 1991-92 data did not vary materially from the years in question, we hold that in this situation petitioners did accurately forecast the income expected over the life of the rental property. In addition, since the salvage value is inconsequential and since the parties stipulated that 1991 and 1992 data did not vary

materially from 1987 and 1988 data, we hold that under these circumstances petitioners did not have to make an adjustment to the rental units' costs for salvage value.

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>under Rule 155</u>.